UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

|  |  |
|---|---|
| SELECT SPECIALTY HOSPITAL-<br>HOUSTON HEIGHTS<br>1917 Ashland Street<br>Houston, Texas 77008<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL O. LEAVITT<br>Secretary, United States Department<br>of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201,<br><br>        Defendant. | Case No. _____ |

## COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY ACTION

Plaintiff Select Specialty Hospital-Houston Heights ("Select-Houston Heights" or "Plaintiff"), by undersigned counsel, seeks judicial review of a final adverse administrative decision of the Secretary of the United States Department of Health and Human Services ("HHS"), Michael O. Leavitt ("Secretary"), in a matter involving the amount of Medicare program reimbursement to which the Plaintiff is entitled.

### I.    INTRODUCTION

1.    Select-Houston Heights is a Medicare-certified long-term acute care hospital ("LTAC") located in Houston, Texas that opened on September 1, 1994 and was certified by Medicare on March 1, 1995.

2. The Complaint is a civil action to obtain judicial review of a final decision rendered by the Deputy Administrator of the Centers for Medicare and Medicaid Services ("CMS," formerly the Health Care Financing Administration ("HCFA")), acting as the delegate of the Secretary.

3. As part of the Balanced Budget Act of 1997, Congress established a continuous improvement bonus incentive designed to reward certain types of providers (including LTACs) that kept their Medicare cost-per-discharge under specified limits. See Pub. L. No. 105-33 (Aug. 5, 1997), codified at 42 U.S.C. § 1395ww(b)(2).

4. Select-Houston Heights contends that it is eligible for a continuous improvement bonus for its Medicare cost reporting period ending August 31, 1999.

5. Plaintiff's Medicare fiscal intermediary, Mutual of Omaha ("fiscal intermediary" or "Mutual"), made an adjustment to populate one line item, but not another line of Plaintiff's "Target Amount and Limit Computation" in its cost report. As a result, Plaintiff did not receive a continuous improvement bonus for its cost report period ending August 31, 1999, notwithstanding the fact that Plaintiff's operating costs-per-discharge were below targets established for continuous improvement bonus eligibility.

6. Plaintiff, being dissatisfied with the fiscal intermediary's final determination of the total amount of Medicare reimbursement due the Plaintiff, appealed that final determination to the Provider Reimbursement Review Board ("PRRB" or "Board"). In deciding whether the fiscal intermediary erred in denying Select-Houston Heights a continuous improvement bonus for its fiscal year ending ("FYE") August 31, 1999, the Board considered two issues: (i) whether the Board had jurisdiction over this case (which the fiscal intermediary challenged), and (ii) whether the Plaintiff satisfied the Medicare regulatory requirement of having operated as an LTAC for at least three full cost reporting periods prior to the period in which it claimed eligibility for the continuous improvement bonus. Following a hearing, the PRRB found in favor

of the Plaintiff on both issues and ordered the fiscal intermediary to make adjustments to the Plaintiff's cost report that would result in Plaintiff being eligible for a continuous improvement bonus. Select Specialty Hospital-Houston Heights v. Mutual of Omaha, PRRB Hearing Dec. No. 2005-D38 (May 10, 2005).

7.     In the subsequent Decision of the Administrator in this case dated July 15, 2005, the Administrator reversed the decision of the PRRB, thereby concluding that the Plaintiff did not qualify for a continuous improvement bonus. The Decision of the Administrator constitutes the final administrative decision of the Secretary, of which the Plaintiff hereby seeks judicial review.

## II.     JURISDICTION AND VENUE

8.     This action arises under Title XVIII of the Social Security Act ("Act"), as amended (42 U.S.C. § 1395 et seq.), and the Administrative Procedure Act (5 U.S.C. § 706).

9.     This action challenges the administrative action of the Secretary under federal laws and regulations and, accordingly, this Court has jurisdiction over this action under 42 U.S.C. § 1395oo.

10.     Venue in the District of Columbia is proper under 42 U.S.C. § 1395oo(f)(1).

## III.     STATUTORY AND REGULATORY BACKGROUND

11.     Medicare is a system of federally-funded health insurance for the aged and the disabled. Medicare is administered under the direction of the Secretary of HHS through CMS and numerous fiscal intermediaries and carriers with which CMS contracts for administrative services. These fiscal intermediaries typically are private insurance companies.

12.     Under Medicare Part A, participating institutions are reimbursed either based on their actual costs of providing services or pursuant to a formula that is based on a preset amount of payment-per-discharge for various types of diagnoses under a prospective payment system

("PPS"). LTACs, defined as hospitals that have an average length of stay greater than 25 days, were among the group of participating institutions that, until 2002, were excluded from the PPS system when it was implemented in 1984. See 42 U.S.C. § 1395ww(d); 42 C.F.R. § 412.23(e). LTACs continued to be reimbursed on a reasonable cost basis (i.e., PPS-exempt) during the Plaintiff's fiscal year at issue in this case. 42 C.F.R. § 413.1(d)(viii). Although not subject to the payment limitations under PPS, LTACs were subject to other payment limitations and incentives under the reasonable cost-based reimbursement system, including the continuous improvement bonus.

13.     Congress established the continuous improvement bonus as part of the Balanced Budget Act of 1997 with the goal of rewarding providers that kept Medicare costs-per-discharge under certain limits by providing for a bonus or incentive payment. See Pub. L. No. 105-33 (Aug. 5, 1997), codified at 42 U.S.C. § 1395ww(b)(2). More specifically, Congress provided that such a bonus could be paid to an "eligible hospital," defined as one that has, among other things, received payments as a PPS-exempt hospital for "at least 3 full cost reporting periods" before the cost reporting period for which the hospital seeks a bonus. 42 U.S.C. § 1395ww(2)(B)(i). The statute does not define "full cost reporting period," and neither the House Report nor the House Conference Report or any other legislative history of the Balanced Budget Act of 1997 contains further guidance on the meaning of that term.

14.     Consistent with its mandate for rewarding providers for controlling costs, HHS promulgated regulations that established eligibility for continuous improvement bonus payments to hospitals that met specified cost-containment goals and were paid as a PPS-exempt hospital "for at least three full cost reporting periods prior to the applicable period . . . ." 42 C.F.R. § 413.40(d)(5). Nowhere in the continuous improvement bonus regulations is there any definition of what constitutes a "full cost reporting period," and there is no guidance that resolves this matter in the available regulatory history or in related Medicare instructions.

## IV. FACTUAL BACKGROUND

15. Houston Heights is a Medicare-certified long-term acute care hospital located in Houston, Texas. Houston Heights opened on September 1, 1994, and was certified by Medicare on March 1, 1995.

16. Houston Heights submitted its first cost report as an LTAC for the period from March 1, 1995, through February 29, 1996, and submitted another cost report for the period from March 1, 1996, through February 28, 1997. Both of these were 12-month cost reports. Houston Heights then filed a cost report covering the period from March 1, 1997, through August 31, 1997. This filing of a cost report for a 6-month time period was the result of a change in the hospital's fiscal year end. After that, there was a change in the ownership of Houston Heights, resulting in the Plaintiff's submission of a cost report for an 11-month period from September 1, 1997, through July 31, 1998. Both of these hospital filings were in compliance with Medicare cost reporting requirements, were full periods under the hospital's circumstances in those years, and were done with the approval of the CMS Regional Office when the cost report cycles were changed for the reasons stated above. The next cost report submitted by Houston Heights was for a 13-month period, from August 1, 1998, through August 31, 1999.

17. For FYE August 31, 1999, the Plaintiff's Medicare operating costs-per-discharge were below targets established pursuant to a statutory formula for a continuous improvement bonus. For this same cost reporting period, Mutual adjusted the "expected cost-per-case" portion of the continuous improvement bonus calculation on Worksheet D-1, line 58.02. However, the Intermediary did not populate the "trended cost-per-case" portion of the same calculation on Worksheet D-1, line 58.01. While the Plaintiff had not initially populated all lines necessary in its cost report to calculate the bonus, the Intermediary's decision to adjust the "expected costs" line but not populate the "trended costs" line in its audit adjustments to the hospital's "Target

Amount and Limit Computation" resulted in a final payment determination in which Plaintiff did not receive a continuous improvement bonus.

18. Houston Heights contends that it is eligible for a continuous improvement bonus for the cost reporting period ending August 31, 1999. The hospital's claim for a continuous improvement bonus is based on the fact that (i) it had operated as an LTAC for at least three full cost reporting periods that, under these circumstances totaled 41 months, prior to the subject period, and (ii) its operating costs-per-discharge for FYE August 31, 1999 were below targets set by statute, about which there is no dispute. Houston Heights operated as an LTAC for at least three cost reporting periods prior to the subject period because it filed two 12-month cost reports for the fiscal years ending in February 1996 and February 1997 (undisputed), as well as two cost reports submitted for shorter time periods ending in August 1997 and July 1998. These two shorter cost reporting periods, approved by CMS and consistent with applicable Medicare requirements, either counted separately under the hospital's circumstances during those periods or combined as one 17-month time period, constitute at least one full cost reporting period, fully consistent with Congress' objectives in establishing the continuous improvement bonus for efficiently operated hospitals that controlled their costs.

19. The fiscal intermediary disagreed. Houston Heights, dissatisfied with the fiscal intermediary's final payment determination, appealed the decision to the Provider Reimbursement Review Board ("PRRB").

## V.  THE PROCEEDINGS BELOW

20. An LTAC that has filed the required cost report and is dissatisfied with the final payment determination by a fiscal intermediary as to the amount of total program reimbursement due the provider may obtain review of that determination by the PRRB pursuant to 42 U.S.C. § 139500(a).

21.     Houston Heights was dissatisfied with the final payment determination by Mutual, which did not include payment of the continuous improvement bonus, and therefore filed a timely appeal to the PRRB.

22.     As background on the jurisdictional issue, the Board reviewed the relevant portions of Worksheet D-1, Part II of CMS form 2552-96, used to compute the continuous improvement bonus. Data contained on lines 58.02 (the "expected cost line") and 58.01 (the "trended cost" line) of the Worksheet are used to compute the bonus. Unless data is input on both lines, no bonus computation is triggered. Houston Heights filed its cost report without populating with data either of those two lines. The fiscal intermediary adjusted the "expected cost" line by adding data, but it did not complete the "trended cost" line. Thus, the Plaintiff did not receive a continuous improvement bonus when the fiscal intermediary issued its Notice of Program Reimbursement ("NPR") for FYE August 31, 1999.

23.     The Board majority determined that the PRRB had jurisdiction over the case because the fiscal intermediary made an adjustment to the "expected cost" line in the section of Worksheet D-1 used to compute the continuous improvement bonus.

24.     On the cost reporting period eligibility issue, the Board concluded unanimously that no controlling Medicare-related authority definitively states whether a cost reporting period other than 12 months is a "full" cost reporting period. The PRRB concluded, however, that Congress' purpose is clear: to provide a continuous improvement bonus to providers that kept costs below certain limits for 36 months. Further, the Board found no evidence that Congress intended to disqualify providers from bonus eligibility simply because some of its cost reporting periods were not 12-months long, particularly given the fact that providers may lawfully use reporting periods other than 12 months in certain circumstances. Accordingly, the Board found that Houston Heights' use of the cost reporting periods described above was acceptable for calculation of the continuous improvement bonus.

25. In its "Decision and Order," the Board found that the fiscal intermediary should make an adjustment using the cost reporting periods proposed by Houston Heights to calculate its eligibility for a continuous improvement bonus.

26. By letter dated May 20, 2005, Mutual requested the CMS Administrator to review and reverse the PRRB decision in this case.

27. On June 22, 2005, Houston Heights, through counsel, submitted comments urging the Administrator to affirm the PRRB decision as correctly decided on both the jurisdictional and bonus-eligibility issues.

28. By letter dated June 23, 2005, the Director, Division of Acute Care, Hospital and Ambulatory Policy Group, Center for Medicare Management within CMS provided comments to the CMS Administrator, urging the Administrator to reverse the PRRB decision.

29. By Decision of the Administrator dated July 15, 2005, CMS issued its final agency decision, through the Deputy Administrator, reversing the PRRB decision in this case.

30. In sum, the Administrator reversed the Board's decision on jurisdiction by adopting Mutual's position that, because Houston Heights had not originally completed all three of the cost report lines needed to calculate qualification for a continuous improvement bonus, the Plaintiff failed to meet the statutory "dissatisfaction" requirement for Board jurisdiction. The Administrator also concluded that the Plaintiff had not exhausted its administrative remedies. In so doing, the Administrator ignored completely the Plaintiff's compelling statutory and case law analysis supporting jurisdiction and injected an exhaustion issue without explaining how the exhaustion requirements were triggered. Similarly, the Administrator adopted the fiscal intermediary's position, without support in the continuous improvement bonus law or regulations, that three 12-months periods were required but were not present. Thus, the Administrator determined that the Plaintiff failed to qualify for the bonus.

## VI.  CLAIM FOR RELIEF

31.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 30 of this Complaint as if fully set forth herein.

32.     Plaintiff's appeal to the PRRB of the fiscal intermediary's partial adjustment to the "Target Amount and Limit Computation" section of Houston Heights' cost report, which failed to provide Plaintiff with a continuous improvement bonus, reflected Plaintiff's dissatisfaction with Mutual's final determination of the total amount of Medicare reimbursement due the Plaintiff, consistent with statutory requirements for jurisdiction, as determined by the PRRB and consistent with applicable judicial authority.

33.     Houston Heights operated as an LTAC efficiently and effectively over a period of more than three years prior to the time it became eligible for a continuous improvement bonus, exactly as envisioned and required by Congress when it established the continuous improvement bonus incentive.  Houston Heights maintained its costs-per-discharge for FYE August 31, 1999 below the target set by statute for at least three full cost reporting periods, as determined unanimously by the PRRB and as required by law.

34.     Based on the record before the PRRB and the Administrator, and for the reasons set forth above, the Administrator's final agency decision to reverse the PRRB and to deny Plaintiff the right to have the continuous improvement bonus it earned for FYE August 31, 1999 calculated and paid is contrary to law, arbitrary and capricious, unsupported by the evidence in the record, and must therefore be set aside as unlawful.

WHEREFORE, Plaintiff requests:

(1)     That the Final Agency Decision be reversed;

(2)     The Plaintiff's continuous improvement bonus for FYE August 31, 1999 be calculated and paid to Plaintiff;

(3)     That Plaintiff be awarded its legal fees and costs of suit; and

(4)     For such other relief as the Court may consider appropriate.

Respectfully submitted,

_____
Andrew L. Hurst, D.C. Bar # 455471
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, D.C. 20005
(202) 414-9200

Of Counsel:
Kevin R. Barry
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, D.C. 20005
(202) 414-9200

Dated: September 9, 2005