# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

### Civil Division

_____
|
**SELECT SPECIALTY HOSPITAL** )
**HOUSTON HEIGHTS,** )
)
**Plaintiff,** )
)
**v.** )                    Case No.  1:05CV01791 (RBW)
)
**MICHAEL O. LEAVITT, SECRETARY** )
**UNITED STATES DEPARTMENT OF** )
**HEALTH AND HUMAN SERVICES,** )
)
**Defendant.** )
_____)

## PLAINTIFF HOUSTON HEIGHTS' MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Andrew L. Hurst, D.C. Bar No. 455471
Kevin R. Barry
Drew W. Carlson
REED SMITH LLP
1301 K Street, N.W.
Suite 1100, East Tower
Washington, D.C. 20005
(202) 414-9200

Counsel for Plaintiff

Dated:  September 8, 2006

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................................1

II.   LEGAL BACKGROUND:  APPLICABLE PROGRAM PROVISIONS...........................3

      A.    Medicare Program Reimbursement – "LTCHs"..................................................3

      B.    Continuing Improvement Bonus.......................................................................4

      C.    Provider Reimbursement Review Board – Jurisdiction............................................4

III.  FACTUAL BACKGROUND ........................................................................................6

      A.    Plaintiff's Cost Reporting Background.................................................................6

      B.    The Intermediary's Adjustments To Plaintiff's Cost Report for FYE August 31,
            1999.........................................................................................................7

IV.   PROCEDURAL BACKGROUND.................................................................................7

V.    STANDARD OF REVIEW ........................................................................................8

      A.    Summary Judgment Standard .........................................................................8

      B.    Administrative Law Standards.........................................................................9

VI.   ARGUMENT .........................................................................................................11

      A.    Houston Heights Satisfied The Statutory Requirements For Obtaining Board
            Jurisdiction Under 42 U.S.C. § 1395oo ...........................................................11

            1.    Houston Heights Was Dissatisfied With The Intermediary's Adjustment
                  To Its Cost Report..............................................................................12

            2.    The Board Properly Exercised Jurisdiction Under 42 U.S.C. § 1395oo....15

            3.    Houston Heights Was Not Subject To Any Mandatory "Exhaustion"
                  Prerequisites To Board Justification .......................................................19

      B.    Houston Heights Is Eligible For A Continuous Improvement Bonus ..................22

            1.    Full Cost Reporting Periods Are Not Necessarily Twelve Months In
                  Length ...............................................................................................24

2.      Other HHS Regulations Do Not Equate "Full Cost Reporting Periods" With "Twelve-Month Periods" ....................................................................24

3.      Medicare Guidance Permits Full Cost Reporting Periods Other Than Twelve Months In Length.........................................................................26

4.      Awarding A CIB Based Upon Cost Reporting Periods Other Than Twelve Months In Length Is Reasonable And Permissible....................................27

VII.    CONCLUSION....................................................................................................29

# TABLE OF AUTHORITIES

*Case:*                                                                 *Page(s):*

A.L. Pharm., Inc. v. Shalala,
    62 F.3d 1484 (D.C. Cir. 1995) ........................................................................9

Auer v. Robbins,
    519 U.S. 452 (1997) ........................................................................10

Barrick Goldstrike Mines, Inc. v. Whitman,
    260 F. Supp. 2d 28 (D.D.C. 2003) ........................................................10

Bethesda Hosp. Ass'n v. Bowen,
    485 U.S. 399 (1988) ........................................................................ *passim*

Burns v. Barnhart,
    312 F.3d 113 (3d Cir. 2002) ........................................................25

Chevron U.S.A. Inc. v. Natural Res. Def. Council,
    467 U.S. 837 (1984) ........................................................................10

Christensen v. Harris County,
    529 U.S. 576 (2000) ........................................................................10

Citizens to Preserve Overton Park, Inc. v. Volpe,
    401 U.S. 402 (1971) ........................................................................9

District of Columbia Hosp. Ass'n. v. D.C.,
    224 F.3d 776 (D.C. Cir. 2000) ........................................................9

Estate of Bell v. Comm'r,
    928 F.2d 901 (9th Cir. 1991) ........................................................25

Keystone Shipping Co. v. United States,
    801 F. Supp. 771 (D.D.C. 1992) ........................................................9

Little Co. of Mary Hosp.and Health Care Ctrs. v. Shalala,
    24 F.3d 984 (7th Cir. 1994) ........................................................10, 14, 18

MaineGeneral Med. Ctr. v. Shalala,
    205 F.3d 493 (1st Cir. 2000) ........................................................ *passim*

Maple Crest Care Ctr. v. Mut. of Omaha Ins. Co.,
    PRRB Hearing Dec. No. 2003-D4 (2003) ........................................19

Mastro Plastics Corp. v. NLRB,
    350 U.S. 270 (1956)........................................................................................................14

Parkview Med. Assoc., L.P. v. Shalala,
    No. Civ. A. 94-1941 RMU, 1997 WL 470107 (D.D.C. Aug. 13, 1997) ...................24, 27

Select Specialty Hospital-Houston Heights v. Mut. of Omaha,
    PRRB Hearing Dec. No. 2005-D38 (2005) .........................................................8, 23

St. Luke's Hosp. v. Sec'y of HHS,
    810 F.2d 325 (1st Cir. 1987)..........................................................................16, 17

Torch Operating Co. v. Babbitt,
    172 F. Supp. 2d 113 (D.D.C. 2001) ...................................................................9

United States v. Hassanzadeh,
    271 F.3d 574 (4th Cir. 2001) ...........................................................................25

United States v. Heirs of Boisdore,
    8 How. 113 (1849)..........................................................................................14

Washington Hosp. Ctr. v. Bowen,
    795 F.2d 139 (D.C. Cir. 1986) .........................................................................10

Your Home Visiting Nurse Servs. v. Shalala,
    525 U.S. 449 (1999)........................................................................................21


*Statutes, Regulations, and Other Authorities*:                            *Page(s)*:

5 U.S.C. § 701 et seq...........................................................................................9
        § 706(2) ...................................................................................................9

42 U.S.C. § 1395oo................................................................................ *passim*
        § 1395oo(a) ...........................................................................13, 14, 15, 16
        § 1395oo(a)(1)(A)(i) ...................................................................5, 11, 12
        § 1395oo(d) ...................................................................................... *passim*
        § 1395oo(e) ...........................................................................6, 17, 19
        § 1395ww(b)(2) ...................................................................................1, 3, 4
        § 1395ww(b)(2)(B)(i) ................................................................... *passim*
        § 1395ww(d) ...................................................................................3

Fed. R. Civ. P. 56(c) ............................................................................................8

Social Security Amendments of 1972, Pub. L. No. 92-603 (1972) ...............................4

Balanced Budget Act of 1997, Pub. L. No. 105-33 (1997) .......................................................1, 4

42 C.F.R. § 405.1801 - 1899 ..................................................................................................5, 20
   § 405.1801(a) ..............................................................................................5, 20
   § 405.1803(a) .....................................................................................................5
   § 405.1835.................................................................................................21, 22
   § 405.1835(a) ..............................................................................................5, 20
   § 405.1835(a)(1) ..........................................................................................5, 20
   § 405.1841....................................................................................................5, 20
   § 405.1885...........................................................................................................21
   § 405.1885(a) .....................................................................................................21
   § 412.23(e) ...........................................................................................................3
   § 412.30(a) .........................................................................................................24
   § 412.30(b)(4) ....................................................................................................24
   § 413.1(d)(viii)......................................................................................................3
   § 413.24(f)..........................................................................................................24
   § 413.24(f)(1) ..............................................................................7, 24, 27, 28
   § 413.24(f)(3) ..............................................................................7, 24, 27, 28
   § 413.40...........................................................................................................11, 29
   § 413.40(b)..........................................................................................................22
   § 413.40(b)(1) ...............................................................................................24, 25
   § 413.40(d)(5) .............................................................................................. *passim*

Medicare Provider Reimbursement Manual, CMS Pub. 15-2, § 102 ............................................26
               § 2931.2.......................................21

**PLAINTIFF HOUSTON HEIGHTS' MEMORANDUM**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Select Specialty Hospital-Houston Heights ("Houston Heights" or "Plaintiff") is a long-term acute care hospital ("LTCH") participating in the Medicare program.  In this action, Plaintiff challenges the final administrative decision of the Secretary of the United States Department of Health and Human Services ("HHS"), Michael O. Leavitt ("Secretary" or "Defendant"), in overturning a final decision by the Provider Reimbursement Review Board ("PRRB" or the "Board") which held that Plaintiff was entitled to a continuing improvement bonus ("CIB") for its Medicare cost reporting period ending August 31, 1999.

Congress established the CIB to reward certain Medicare-participating hospitals that maintain lower costs-per-discharge by providing those cost-efficient hospitals with a bonus for successfully meeting specified cost-containment standards.  See Pub. L. No. 105-33 (Aug. 5, 1997), codified at 42 U.S.C. § 1395ww(b)(2).  Congress defined a CIB-eligible hospital as one that has, among other things, been paid as a hospital excluded from the Medicare Part A prospective payment system ("PPS") for "at least 3 full cost reporting periods" before the cost reporting period for which the hospital seeks a bonus.  42 U.S.C. § 1395ww(b)(2)(B)(i); see also 42 C.F.R. § 413.40(d)(5).

Houston Heights operated as a PPS-exempt LTCH for at least three full cost reporting periods, totaling a 41-month period, prior to the cost reporting period ending August 31, 1999.  Houston Heights' operating costs-per-discharge were below the established cost-containment targets for that period and therefore met those statutory standards for earning a CIB.  Although Houston Heights had not performed the full worksheet computation needed to claim the CIB in its cost report, Plaintiff's fiscal intermediary, Mutual of Omaha (the "Intermediary"), adjusted the "expected costs" portion of the CIB calculation worksheet in the hospital's cost report, but did not populate the related "trended costs" portion of the CIB calculation on this same

worksheet. As a result, Houston Heights was denied a CIB. Plaintiff filed a timely request for hearing with the PRRB to challenge the Intermediary's final determination that the hospital's total Medicare reimbursement for the fiscal year ending ("FYE") August 31, 1999 would not include a CIB.

Following a hearing, the Board found in favor of Plaintiff and ordered the Intermediary to adjust Plaintiff's cost report using a methodology that would, in effect, reflect Plaintiff's eligibility for a CIB. The Board determined that Plaintiff could use the series of cost-reporting periods it proposed, demonstrating that it maintained costs below the specified limits for at least 36 months and, thus, qualifying for a CIB, consistent with Congress' clear objective. The Board further determined that it had jurisdiction under 42 U.S.C. § 1395oo because Houston Heights was "dissatisfied" with the Intermediary's adjustment to the "expected cost line" in its cost report and with the "final determination" of Medicare reimbursement due the hospital. Upon review, the Deputy Administrator of the Centers for Medicare and Medicaid Services ("CMS"), acting as the delegate of Defendant, reversed the Board's decision on grounds that Plaintiff did not meet the threshold test for Board jurisdiction and had not operated for three full cost reporting periods prior to claiming the CIB.

Plaintiff filed its complaint with this Court on September 9, 2005 seeking judicial review of CMS Deputy Administrator's decision, which constitutes the final administrative decision of the Secretary. The issues before the Court are (i) whether the Board properly had jurisdiction to resolve Plaintiff's dissatisfaction with the Intermediary's final determination of Medicare reimbursement pursuant to 42 U.S.C. § 1395oo, and (ii) whether Plaintiff satisfied the Medicare requirement of having operated as an LTCH for at least three full cost reporting periods prior to the period in which it became eligible for the CIB.

Houston Heights maintains that Defendant's final agency decision to reverse the PRRB and to deny Plaintiff its eligibility for the CIB is unlawful and should be set aside. Specifically,

Plaintiff contests the Secretary's application of 42 U.S.C. § 1395oo, 42 U.S.C. § 1395ww(b)(2), and 42 C.F.R. § 413.40(d)(5) as unreasonable, contrary to law, and unsupported by the evidence in the record.  There are no material facts in dispute in this matter.  Accordingly, this Court should grant Plaintiff's Motion for Summary Judgment; order the CIB for FYE August 31, 1999 to be calculated and paid to Plaintiff; award Plaintiff its legal fees and costs of suit; and grant such other relief as the Court may consider appropriate.

## II.    LEGAL BACKGROUND:  APPLICABLE PROGRAM PROVISIONS

### A.    Medicare Program Reimbursement – "LTCHs"

Medicare is a system of federally-funded health insurance for the aged and the disabled. Medicare is administered under the direction of the Secretary of HHS through CMS and numerous fiscal intermediaries and carriers with which CMS contracts for administrative services.  These fiscal intermediaries typically are private insurance companies.  (Plaintiff Houston Heights' Statement Of Material Facts Not In Dispute ("SMF") ¶ 3.)

Under Medicare Part A, participating institutions are reimbursed either based on their actual costs of providing services or pursuant to a formula that is based on a preset amount of payment-per-discharge for various types of diagnoses under a prospective payment system, or PPS.  LTCHs, defined as hospitals that have an average length of stay greater than 25 days, were among the group of participating institutions that, until 2002, were excluded from the hospital PPS system implemented in 1984.  See 42 U.S.C. § 1395ww(d); 42 C.F.R. § 412.23(e).  LTCHs continued to be reimbursed on a reasonable cost basis (i.e. PPS-exempt) during Plaintiff's fiscal year at issue in this case.  42 C.F.R. § 413.1(d)(viii).  LTCHs were subject to other payment limitations and cost-containment initiatives under the reasonable cost-based reimbursement system, including the CIB.  (SMF ¶ 5.)

### B.    Continuing Improvement Bonus

Congress established the CIB as part of the Balanced Budget Act of 1997 with the goal of rewarding providers that keep Medicare costs-per-discharge under certain limits by providing successful providers with a bonus or incentive payment.  See Pub. L. No. 105-33 (Aug. 5, 1997), codified at 42 U.S.C. § 1395ww(b)(2); (SMF ¶ 4.)  More specifically, Congress provided that such a bonus could be paid to an "eligible hospital," defined as one that has, among other things, received payments as a PPS-exempt hospital for "at least 3 full cost reporting periods" before the cost reporting period for which the hospital seeks a bonus.  42 U.S.C. § 1395ww(b)(2)(B)(i).  The statute does not define "full cost reporting period," and neither the House Report nor the House Conference Report or any other legislative history of the Balanced Budget Act of 1997 contains further guidance on the meaning of that term.

Consistent with its mandate for rewarding providers for controlling costs, HHS promulgated regulations that specified CIB eligibility standards.  42 C.F.R. § 413.40(d)(5).  These regulations do not define what constitutes a "full cost reporting period," and there is no guidance that resolves this matter in the available regulatory history or related Medicare instructions.  With respect to the cost-containment requirements of the CIB regulation, a qualifying hospital must keep its operating costs for the period below the least of the following measures: (1) the target amount for the period; (2) the hospital's "trended costs"; or (3) the hospital's "expected costs", as determined by the prior year's costs.  Id.  In the instant case, neither the Intermediary nor the Secretary contends that Houston Heights failed to achieve the cost-containment targets for purposes of qualifying for a CIB.  (SMF ¶ 12.)

### C.    Provider Reimbursement Review Board - Jurisdiction

The PRRB was created by the Social Security Amendments of 1972 as an independent forum for hearing and deciding disputes between providers and intermediaries with respect to reimbursement issues under the Medicare program.  See Pub. L. No. 92-603 (Oct. 30, 1972).  The Board's authority and jurisdiction to hear such disputes, as well as the obligations and rights

of appealing providers, are set forth at 42 U.S.C. § 1395oo.  HHS has also promulgated regulations implementing the PRRB appeals process.  See 42 C.F.R. §§ 405.1801 – 405.1899.

Under the statute, a provider may obtain a hearing before the Board if it "is dissatisfied with the final determination of its fiscal intermediary . . . as to the amount of total program reimbursement due the provider . . . for the period covered by such report . . . ."  42 U.S.C. § 1395oo(a)(1)(A)(i).  The statute's requirement that a provider be "dissatisfied" with a final intermediary determination is central to the jurisdictional dispute in the instant case.

The Board's regulations further state that a provider has a right to a PRRB hearing if an "intermediary determination" has been made, the provider has filed a written request for a hearing pursuant to 42 C.F.R. § 405.1841, and the amount in controversy exceeds $10,000. 42 C.F.R. § 405.1835(a).  For providers paid on a reasonable cost basis, such as Plaintiff, "intermediary determination" is defined as "a determination of the amount of total reimbursement due the provider" and is deemed to be synonymous with the terms "intermediary's final determination" and "final determination of the Secretary" as those terms are used in 42 U.S.C. § 1395(oo); 42 C.F.R. § 405.1801(a).

Following the submission of a provider's cost report, intermediaries are required to issue a written notice, commonly referred to as a Notice of Program Reimbursement ("NPR"), reflecting the intermediary's determination of the total reimbursement due the provider for that particular cost period.  42 C.F.R. § 1803(a).  Accordingly, an NPR generally serves to provide notice of the "intermediary determination" that establishes a dissatisfied provider's right to a hearing before the Board.  See 42 U.S.C. § 1395oo(a)(1)(A)(i); 42 C.F.R. § 405.1835(a)(1).

Congress has granted broad authority to the Board with respect to hearing and resolving provider reimbursement disputes.  Namely, section 1395oo(d) of the statute provides that:

> The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report

> (including revisions adverse to the provider of services) even though such
> matters were not considered by the intermediary in making such final
> determination.

42 U.S.C. § 1395oo(d).  Accordingly, the Board may, among other things, revise a cost report,

affirm the fiscal intermediary's final determination on a particular issue, and/or order a fiscal

intermediary to reopen cost reports and make specific changes – regardless of whether the

intermediary addressed the matter before the Board in rendering its final Medicare

reimbursement determination.

In addition, the statute provides that "[t]he Board shall have full power and authority to

make rules and establish procedures, not inconsistent with the provisions of this title or

regulations of the Secretary, which are necessary or appropriate to carry out the provisions" of 42

U.S.C. § 1395oo.  Id. § 1395oo(e).  Consequently, the PRRB has the broad authority to issue

procedural and substantive rules for provider reimbursement disputes and may otherwise

establish policies consistent with regulations promulgated by HHS and Title XVIII of the Social

Security Act.

## III.  FACTUAL BACKGROUND

### A.  Plaintiff's Cost Reporting Background

Houston Heights is a Medicare-certified LTCH located in Houston, Texas.  The Hospital

opened on September 1, 1994, and was certified by Medicare on March 1, 1995.  (SMF ¶ 6.)

Houston Heights submitted its first cost report as an LTCH for the period from March 1, 1995,

through February 29, 1996, and submitted another cost report for the period from March 1, 1996,

through February 28, 1997.  Both of these were 12-month cost reports.  (SMF ¶¶ 7, 8.)

Houston Heights thereafter filed a cost report covering the period from March 1, 1997,

through August 31, 1997.  This filing of a cost report for a 6-month time period was the result of

a change in the hospital's fiscal year end.  (SMF ¶ 9.)  After that, there was a change in the

ownership of Houston Heights, resulting in Plaintiff's submission of a cost report for an 11-

month period from September 1, 1997, through July 31, 1998.  (SMF ¶ 10.)  Both of these

hospital filings were in compliance with Medicare cost reporting requirements and were done

with the approval of the Intermediary when the cost report cycles were changed for the reasons

stated above.  See 42 C.F.R. §§ 413.24(f)(1), 413.24(f)(3).  The next cost report submitted by

Houston Heights was for a 13-month period, from August 1, 1998, through August 31, 1999.

(SMF ¶ 11.)  Accordingly, Plaintiff had operated as an LTCH for at least three full and complete

cost reporting periods under applicable Medicare rules, or for a total of 41 months, prior to the

cost reporting period ending August 31, 1999.

### B.    The Intermediary's Adjustments to Plaintiff's Cost Report for FYE August 31, 1999

For the cost reporting period ending August 31, 1999, Houston Heights' operating costs-

per-discharge were below targets established by Congress and CMS for a CIB.  See 42 U.S.C. §

1395ww(b)(2)(B)(i); 42 C.F.R. § 413.40(d)(5); (SMF ¶ 12.  For this same cost reporting period,

the Intermediary adjusted the "expected cost-per-case" portion of the CIB calculation on line

58.02 of Worksheet D-1, Part II of CMS Form 2552-96 (the "Worksheet").  (SMF ¶ 15.)

However, the Intermediary did not populate the related "trended cost-per-case" portion of the

CIB calculation on line 58.01 of the Worksheet.  (SMF ¶ 16.)  While Plaintiff had not initially

populated all lines necessary in its cost report to calculate the bonus, the Intermediary's decision

to adjust the "expected costs" line but not populate the "trended costs" line as part of its audit

adjustments to the hospital's "Target Amount and Limit Computation" resulted in a final

payment determination in which Houston Heights did not receive a CIB and with which the

hospital was dissatisfied.   (SMF ¶¶ 13, 14, 17.)  The Intermediary issued a NPR, which included

the aforementioned adjustment, to Houston Heights on February 28, 2002.  (SMF ¶ 19.)

## IV.    PROCEDURAL BACKGROUND

Plaintiff, being dissatisfied with the fiscal intermediary's final determination of the total

amount of Medicare reimbursement due the Plaintiff, appealed that final determination by

requesting a hearing before the PRRB. (SMF ¶ 21.) The Board accepted jurisdiction of the Hospital's appeal, assigned a case number and established a schedule for briefing and hearing the matter. (SMF ¶ 22.) Almost two years after Houston Heights filed its initial request for hearing, the Intermediary filed a brief seeking dismissal of the appeal on jurisdictional grounds.

In deciding whether the Intermediary erred in denying Houston Heights a CIB, the Board considered two issues: (i) whether the Board had jurisdiction over this case (which the Intermediary challenged), and (ii) whether Plaintiff satisfied the Medicare requirement of having operated as an LTCH for at least three full cost reporting periods prior to the period in which it claimed eligibility for the CIB. Following a hearing, the PRRB found in favor of the Plaintiff on the jurisdictional issue, noting that the Intermediary had made an adjustment to Plaintiff's cost report. (SMF ¶ 23.) Moreover, the Board unanimously held that Plaintiff's cost reporting history rendered Houston Heights eligible for a CIB and ordered the Intermediary to make the necessary adjustments to the cost report to that effect. Select Specialty Hospital-Houston Heights v. Mutual of Omaha, PRRB Hearing Dec. No. 2005-D38 (May 10, 2005); (SMF ¶ 24).

On July 15, 2005, the Deputy Administrator of CMS, acting as the delegate of the Defendant, reversed the PRRB's decision on both issues, concluding that the Board did not have jurisdiction to hear the dispute and that, as a substantive matter, Plaintiff did not qualify for a CIB for the applicable cost reporting period. Plaintiff now appeals the Decision of the Administrator, which constitutes the final administrative decision of the Secretary. (SMF ¶ 1.)

## V.    STANDARD OF REVIEW

### A.    Summary Judgment Standard

Summary judgment is warranted where the moving party establishes that no genuine issue of material fact is in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); District of Columbia Hosp. Ass'n. v. D.C., 224 F.3d 776, 779 (D.C. Cir. 2000). "Summary judgment is especially appropriate in cases . . . where the Court is called on to review

a decision of an administrative agency" because "what is often in issue are not the facts, but whether the agency erred in applying the law." Keystone Shipping Co. v. United States, 801 F. Supp. 771, 776 (D.D.C. 1992).  "In ruling upon cross-motions for summary judgment, the Court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." Torch Operating Co. v. Babbitt, 172 F. Supp. 2d 113, 121 (D.D.C. 2001).

      **B.**    **Administrative Law Standards**

An action under Section 1878 of the Social Security Act seeking judicial review of Medicare reimbursement actions is subject to the provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.  See 42 U.S.C. § 1395oo; (SMF ¶2).  Under the APA, a court must set aside agency actions which are:  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; contrary to constitutional right, power, privilege, or immunity; or in excess of statutory jurisdiction, authority or limitations, or short of statutory right.  5 U.S.C. § 706(2).  The APA requires the reviewing court to engage in a "thorough, probing, in-depth review."  Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971); see also A.L. Pharm., Inc. v. Shalala, 62 F.3d 1484, 1491 (D.C. Cir. 1995).

The primary substantive issues in this case are whether the Secretary unreasonably interpreted and applied the statutes and regulations that (i) establish the jurisdiction of the Board; and (ii) that set forth the eligibility requirements for awarding a CIB.  A related issue is the level of deference the Court should give to the Secretary's determination that the PRRB lacks jurisdiction to hear Plaintiff's appeal, particularly considering that the Board accepted jurisdiction at the outset and, after a hearing on the issue, determined that it properly had jurisdiction in accordance with 42 U.S.C. § 1395oo.

The applicable methodology for reviewing whether an agency's interpretation of a statute that it administers is "in accordance with the law" is to first determine whether Congress has

"directly spoken to the precise question at issue."  Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842 (1984) ("[i]f the intent of Congress is clear, that is the end of the matter . . . .").  The amount of deference a court must give to an agency's interpretation of its own regulation is based on whether the applicable regulation is clear or ambiguous.  See Christensen v. Harris County, 529 U.S. 576, 588 (2000) (noting that the deferential standard established in Auer v. Robbins, 519 U.S. 452 (1997) for an agency's interpretation of its own regulation applies "only when the language of the regulation is ambiguous."); Barrick Goldstrike Mines, Inc. v. Whitman, 260 F. Supp. 2d 28, 35 (D.D.C. 2003) (J. Jackson).

Applying these standards to this matter, Chevron deference to the Secretary's interpretation of 42 U.S.C. § 1395oo is not appropriate because Congress has "directly spoken to the precise question at issue."  Chevron, 467 U.S. at 842.  The Supreme Court has specifically held 42 U.S.C. § 1395oo to be unambiguous and, therefore, "[t]he plain meaning of the statute decides the issue presented."  Bethesda Hospital Ass'n v. Bowen, 485 U.S. 399, 403 (1988) (analyzing the Secretary's interpretation of 42 U.S.C. 1395oo and concluding that it was not entitled to Chevron deference); see also Washington Hospital Ctr. v. Bowen, 795 F.2d 139, 144 (D.C. Cir. 1986) (finding that the plain language of section 1395oo(a) controls, "obviating any need to decide whether the District Court or the Secretary has the better of the deference debate"); MaineGeneral Med. Ctr. v. Shalala, 205 F.3d 493, 501 (1st Cir. 2000) (finding "Chevron abdication to the views of the agency inappropriate on the matter"); Little Company of Mary Hospital and Health Care Ctrs. v. Shalala, 24 F.3d 984, 989 (7th Cir. 1994) (holding same). With respect to the Secretary's application of 42 U.S.C. § 1395ww(b)(2)(B)(i) and 42 C.F.R. § 413.40(d)(5) to deny Houston Heights the CIB it earned, the Secretary's interpretation of those provisions is plainly erroneous, inconsistent, and therefore invalid as a matter of law.  See Auer, 519 U.S. at 461.

VI.    **ARGUMENT**

This dispute involves the legal validity of the Secretary's determination that the Board does not have jurisdiction to hear Plaintiff's reimbursement dispute, despite the fact that the Board accepted Plaintiff's request for hearing and expressly determined that it had the statutory authority to do so.  Also at issue is the validity of the Secretary's determination that Plaintiff did not qualify for a CIB for FYE 1999, particularly in light of the fact that Houston Heights clearly succeeded in maintaining the cost savings that Congress sought to encourage with the CIB.  In the proceedings below, the Board correctly held for Houston Heights on both issues and, as such, this Court should vacate the final agency decision of the Secretary and reinstate the final decision of the Board.

The final administrative decision of the Secretary is invalid because: (1) it is an unlawful application of the clear and unambiguous statutory requirements for Board jurisdiction set forth at 42 U.S.C. § 1395oo; and (2) it is a plainly erroneous, inconsistent, and unreasonable interpretation of "full cost reporting period" as that term is used in the CIB eligibility criteria set forth at 42 U.S.C. § 1395ww(b)(2)(B)(i) and 42 C.F.R. § 413.40.  Accordingly, Houston Heights' motion for summary judgment should be granted and the Decision of the Administrator vacated such that the Intermediary is ordered to calculate and pay Plaintiff its CIB for FYE August 31, 1999.

### A.    Houston Heights Satisfied the Statutory Requirements for Obtaining Board Jurisdiction Under 42 U.S.C. § 1395oo

By statute, a provider that has filed a cost report with its fiscal intermediary may obtain a hearing before the Board if it "is dissatisfied with a final determination of  . . . its fiscal intermediary . . . as to the amount of total program reimbursement due the provider . . . for the period covered by such report . . . ."  42 U.S.C. § 1395oo(a)(1)(A)(i).  The Secretary's primary contention is that, for purposes of the statute, Plaintiff cannot be considered "dissatisfied" based upon the Intermediary's failure to populate the line of the cost report that, if completed, would

have resulted in the award of a CIB to Plaintiff.  See Decision of the Administrator, Administrative Record ("AR") at 6-7.  In addition, the Secretary also asserts that Houston Heights did not exhaust certain administrative prerequisites to Board review and therefore was not entitled to a hearing before the PRRB.  As discussed below, both of the Secretary's contentions are contrary to the plain and unambiguous language of the statute and otherwise not in accordance with Congress' broad grant of jurisdiction to the Board to hear controversies such as the instant case.

> **1.      Houston Heights Was Dissatisfied with the Intermediary's Adjustment to its Cost Report**

As noted, the statute requires that a provider be "dissatisfied" in order to obtain a hearing before the Board with respect to matters involving the final determination of its Medicare reimbursement for a particular cost period. 42 U.S.C. § 1395oo(a)(1)(A)(i).  Houston Heights appealed the final determination of the Intermediary, as reflected in an adjustment in the Hospital's cost report as part of the Target Amount and Limit Computation, on precisely that basis.

In his decision, the Secretary places significant emphasis on the fact that the provider did not populate all lines in its cost report necessary to calculate the CIB for FYE August 31, 1999. The Secretary appears to contend that a provider's right to a hearing extends only to claims presented to a fiscal intermediary because the provider cannot be "dissatisfied" with the intermediary's decision to award the amounts requested in the cost report. AR at 6.  This contention, however, has been soundly rejected.

In Bethesda Hospital Ass'n v. Bowen, 485 U.S. 399, 404 (1988), the Supreme Court held that a provider may appeal its dissatisfaction with the total amount of Medicare reimbursement without making a claim for reimbursement in the cost report filed with the intermediary.  In Bethesda Hospital, the providers did not claim certain insurance costs that were in excess of reimbursement limits established by regulation.  Upon receiving the intermediary's final

determination of program reimbursement, the providers requested a Board hearing to challenge the regulation that imposed the reimbursement limits on the providers' insurance costs, despite that the providers' costs above such regulatory limits were not claimed on the cost reports. The Board declined jurisdiction and the providers appealed; ultimately, the case came before the Supreme Court on the issue of Board jurisdiction.

Addressing the same argument made by the Secretary in this case - that is, that a provider may not be "dissatisfied" with the intermediary's decision if it did not claim reimbursement in the cost report - the Supreme Court held that the Secretary's "strained interpretation offered [] is inconsistent with the express language of the statute." Bethesda Hospital, 485 U.S. at 404. Instead, the Court reasoned that providers "could claim dissatisfaction, within the meaning of the statute, without incorporating their challenge in the cost reports filed with their fiscal intermediaries." Id. at 405. Therefore, even if the Intermediary had not adjusted the expected costs line of the Plaintiff's cost report in the instant case, Houston Heights would still have a right under the plain language of section 1395oo(a) to appeal the Intermediary's ultimate decision not to grant the CIB. Nonetheless, the Intermediary did, in fact, make an adjustment as part of its final cost determination – a decision which directly impacted Houston Hospital's eligibility for the CIB bonus it had earned through its rigorous cost controls and with which the Plaintiff is clearly dissatisfied.

In overturning the Board's decision in the instant case, the Secretary relies primarily upon the Court's observation in Bethesda Hospital that a provider's failure to request all reimbursement to which it is entitled "might well establish that [the] provider was satisfied with the amounts requested in its cost report and awarded by the fiscal intermediary." Bethesda Hospital, 485 U.S. at 404. Contrary to the Secretary's implication, however, the Court did not conclude that the Board's statutory jurisdiction under section 1395oo would be necessarily foreclosed under such circumstances; rather, the Court simply noted that "those circumstances

are not presented" in <u>Bethesda Hospital</u>.  <u>See also</u> Part VI(A)(2) of this Memorandum (discussing the Board's authority to exercise its jurisdiction as a matter of discretion).

Furthermore, the situation contemplated by the Court is not present in the facts of the instant case: here, the Intermediary affirmatively adjusted one line of Plaintiff's CIB calculation, but failed to populate another, directly resulting in the denial of a CIB to Houston Heights. Accordingly, the Secretary's contention that the Board lacks jurisdiction to adjudicate Plaintiff's dissatisfaction is not supported by the Supreme Court's recognition of issues *not* before the Court in <u>Bethesda Hospital</u>.  <u>See also</u> <u>MaineGeneral Medical Center v. Shalala</u>, 205 F.3d 493, 499 (1st Cir. 2000) (finding that the <u>Bethesda Hospital</u> language relied upon by the Secretary is "explicitly dictum"); <u>Little Company of Mary Hospital and Health Care Centers v. Shalala</u>, 24 F.3d 984 (7th Cir. 1994) (construing the above-referenced <u>Bethesda Hospital</u> language as a "hint" and not as part of the Court's holding).

In addition to the clear and unambiguous dictates of Section 1395oo(a), the Supreme Court held that the language and design of the statute as a whole requires a conclusion that Board may hear disputes by providers that did not first present claims in their cost reports. <u>Bethesda Hospital</u>, 485 U.S. at 405-06; <u>see</u> <u>e.g.</u>, <u>Mastro Plastics Corp. v. NLRB</u>, 350 U.S. 270, 285 (1956) ("In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law . . . .") (quoting <u>U.S. v. Heirs of Boisdore</u>, 8 How. 113, 122 (1849)).  In particular, the Court observed that section 1395oo(d) of the statute explicitly provides that:

> in making its decision whether to affirm, modify, or reverse intermediary's decision, the Board can 'make any other revisions on matters covered by such cost report . . . even though such matters were not considered by the intermediary in making such final determination.'

<u>Id.</u> at 405-06 (quoting 42 U.S.C. § 1395oo(d)) (internal references omitted).  With respect to the Board's enumerated powers, the Court recognized that the "only limitation prescribed by Congress is that the matter must have been *'covered by such cost report'* . . . *even if such cost or*

*expense was not expressly claimed*." Id. (emphasis added).  Given the nature of the authority granted to the Board, the Supreme Court reasoned, the Board's statutory jurisdiction also should be viewed broadly.  Accordingly, the Court concluded that Board jurisdiction extends to those matters covered by the dissatisfied provider's cost report, even if the intermediary did not address such matters in rendering its final determination.  Applying Bethesda Hospital to the facts of the instant case, the Board has statutory jurisdiction to hear the Plaintiff's challenge because Houston Heights is dissatisfied with the Intermediary's failure to award the CIB for the cost reporting period ending August 31, 1999, a matter clearly covered by such cost report.

The Secretary's narrow view of PRRB jurisdiction in the instant case is not supported by the Court's conclusions in Bethesda Hospital and is inconsistent with the overall design and operation of 42 U.S.C. § 1395oo.  The Secretary takes a narrow view of the statute's jurisdictional component while, at the same time, downplaying the broad authority of the Board under 42 U.S.C. § 1395oo(d).  In essence, the Secretary contends that Houston Heights cannot be considered "dissatisfied" with the Intermediary's adjustment of the expected costs portion of the CIB worksheet – even though the adjustment is clearly a matter "covered by such cost report" and therefore within the scope of Board authority granted by Congress. Id.  This view completely ignores the holding in Bethesda Hospital that a provider may be "dissatisfied" with the total amount of Medicare reimbursement without making a claim in the cost report.  Moreover, it fails to take into consideration that Court's observation that the jurisdictional requirements of 42 U.S.C. § 1395oo(a) are closely entwined with the authority granted to the Board under 42 U.S.C. § 1395oo(d).  Accordingly, the Secretary's final administrative decision was contrary the plain language of the statute and the Decision of the Administrator should be overturned.

**2.    The Board Properly Exercised Jurisdiction Under
         42 U.S.C. § 1395oo**

Even prior to the Court's decision in Bethesda Hospital, the First Circuit Court of Appeals concluded that the Board has statutory jurisdiction to decide an issue not first raised

before the fiscal intermediary. <u>St. Luke's Hospital v. Sec'y of HHS</u>, 810 F.2d 325, 332 (1st Cir. 1987) (holding that "it is up to the Board in the first instance to decide whether it will or will not hear" claims not included in the cost report). Furthermore, the Court of Appeals more recently held that the Board has the power to decide such issues as a matter of discretion and that exercising its statutory jurisdiction on a case-by-case basis is entirely consistent with <u>Bethesda Hospital</u>. <u>See</u> <u>MaineGeneral Med. Ctr. v. Shalala</u>, 205 F.3d 493, 501 (1st Cir. 2000). Consequently, the Board's decision to grant Plaintiff's request for hearing in the instant case was a proper exercise of its statutory authority, contrary to the Secretary's assertions.

Similar to the facts in the instant case, the provider hospitals in <u>MaineGeneral</u> were entitled to Medicare reimbursement (in <u>MaineGeneral</u>, reimbursable Medicare bad debt) but mistakenly omitted the claimed amounts from cost reports submitted to the intermediary.[1] After receiving NPRs for the years in question, the providers appealed to the Board to challenge the final determination of Medicare reimbursement. The Board, believing that it did not have the discretion to hear the appeal under subsection 1395oo(a), dismissed the providers' requests for lack of statutory jurisdiction. The District Court affirmed the Board's decision, holding that the providers could not be considered "dissatisfied" as contemplated by <u>Bethesda Hospital</u>.

Reversing the District Court on appeal, the First Circuit reiterated the Court's holding in <u>Bethesda Hospital</u> that 42 U.S.C. § 1395oo confers broad authority to the Board to decide matters "covered in [the] cost report", regardless of whether the intermediary addressed such matters in issuing its final determination. <u>MaineGeneral</u>, 205 F.3d at 500. Accordingly, the Court of Appeals found that the bad debts omitted from the cost report by the <u>MaineGeneral</u>

---

[1] The providers in <u>MaineGeneral</u> were entitled to claim reimbursable Medicare bad debt, <u>i.e.</u> outstanding unpaid cost-sharing and premium amounts deemed uncollectible from Medicare and/or Medicaid beneficiaries. Medicare bad debt, like the CIB at issue in the instant case, is usually claimed by including those amounts on the cost report filed with the fiscal intermediary.

providers "were clearly a matter covered by a cost report", despite not being claimed in the first instance. Id. at 499.

The Court of Appeals also held that its prior decision in St. Luke's Hospital – which concluded that the Board has discretion to exercise jurisdiction in cases where the provider does not first present claims to its intermediary – remained valid in light of Bethesda Hospital, which did not address the issue of Board discretion in accepting or declining such cases. Id.; see St. Luke's Hospital, 810 F.2d at 332.  In St. Luke's Hospital, the Court of Appeals recognized that "Congress specifically granted the Board 'full power and authority' to make rules 'necessary or appropriate' to carry out its statutory tasks."  810 F.2d at 332 (quoting 42 U.S.C. § 1395oo(e)). Consequently, the St. Luke's Hospital court held that this gives the Board "the power to limit by rule the extent to which it will hear an issue not raised [before the intermediary]; it can also do so on a case-by-case basis." Id.  Therefore, the First Circuit in MaineGeneral rejected the Secretary's restrictive interpretation of the statute's "dissatisfaction" requirement to deny Board jurisdiction – the same argument raised by the Secretary in the instant case and strongly criticized in Bethesda Hospital.

In holding that Bethesda Hospital does not foreclose the Board's discretion to hear appeals by providers that initially omit claims in their cost reports, the Court of Appeals recognized that both Bethesda Hospital and St. Luke's Hospital dealt with the question of Board jurisdiction under section 1395oo as a whole and resolved that issue through similar analyses of the statute. MaineGeneral, 205 F.3d at 499.  As such, the Court of Appeals found that Bethesda Hospital's broad construction of Board jurisdiction was consistent with First Circuit jurisprudence, including the conclusion in St. Luke's Hospital that the Board may properly decide matters not first considered by the intermediary, although "the Board need not exercise that power." Id. (quoting St. Luke's Hospital, 810 F.2d at 326).

Furthermore, the First Circuit held that the Supreme Court's language in <u>Bethesda Hospital</u> relied upon by the Secretary in its final agency decision – that is, that a failure to request reimbursement "might well establish that a provider was satisfied" – was "explicitly dictum" because those circumstances were not presented in <u>Bethesda Hospital</u>. <u>MaineGeneral</u>, 205 F.3d at 500. The First Circuit concluded that Congress does not, in the statute, require the Board to decline jurisdiction with respect to providers such as those in <u>MaineGeneral</u> and Plaintiff in the instant case. <u>Id.</u> at 501. Rather, the Board has statutory jurisdiction to hear claims not first raised before the intermediary and it may accept or decline such cases as a matter of discretion. <u>Id.</u>

In the proceedings below, the Board decided to accept jurisdiction. (SMF ¶ 22.) The Intermediary cited a court decision that it suggested supports its position on the jurisdictional challenge. The intermediary's reliance on this case is misplaced. In <u>Little Company of Mary Hospital and Health Care Ctrs. v. Shalala</u>, 24 F.3d 984 (7th Cir. 1994) ("Little Company"), the Board determined, unlike in the pending Houston Heights case, that it lacked jurisdiction under circumstances much different from those in the instant case. In <u>Little Company</u>, the hospital had received Medicare PPS payments, not cost-based reimbursement like Houston Heights. Separate appeal mechanisms apply to those two systems. The hospital in <u>Little Company</u> sought to appeal the intermediary's allegedly erroneous assignment of a diagnosis-related grouping ("DRG") almost two years after that assignment had taken place. The Medicare PPS regulations, however, gave the hospital only 60 days to appeal erroneous DRG assignments. The hospital therefore had failed to comply with that 60-day rule and the court found that this prerequisite to the Board's jurisdiction – which does not apply to Houston Heights in the instant case – was not satisfied. <u>Id.</u> at 989. Moreover, the court's holding in <u>Little Company</u> was expressly limited to "the context where the provider also fails to appeal the PPS payment . . . ." <u>Id.</u> at 993. In contrast, the instant

case involves an appeal of cost-based reimbursement where Plaintiff made a timely appeal of the Intermediary's audit adjustment that directly impacted the provider's eligibility for a CIB.[2]

In sum, this Court should hold that the Board has broad jurisdictional authority to hear this case as a matter covered by the cost report and properly exercised that authority to resolve an issue not first presented to the intermediary.  MaineGeneral presents facts similar to those in the instant case and, as explained below, there are no additional prerequisites to Board jurisdiction that are applicable to Houston Heights.  Importantly, MaineGeneral presents a rule of general applicability clearly consistent with Bethesda Hospital and provides flexibility to the Board to exercise the "full power and authority" that Congress granted it.  42 U.S.C. § 1395oo(e).  Accordingly, the Secretary's application of 42 U.S.C. § 1395oo in denying the Board jurisdiction to hear Plaintiff's appeal is contrary to law and, as such, the Decision of the Administrator should be set aside.

### 3.    Houston Heights Was Not Subject To Any Mandatory "Exhaustion" Prerequisites to Board Jurisdiction

The Secretary also argues that Houston Heights "has not exhausted its administrative remedy" and therefore was not entitled to request a hearing before the Board.  See Decision of the Administrator, AR at 7.  This contention is wholly without merit.  Plaintiff was entitled under the applicable statute and regulations to seek Board review of the Intermediary's final determination of Medicare reimbursement.  There are no additional mandatory prerequisites to Board jurisdiction applicable to Houston Heights' challenge to the Intermediary's final determination of Medicare reimbursement for the year at issue.

---

[2]    The Intermediary also cited as support the PRRB case of Maple Crest Care Center v. Mutual of Omaha Insurance Co., Dec. No. 2003-D4 ("Maple Crest").  First, we would note that the decision does not constitute formal precedent, nor is it a law, regulation or CMS ruling under 42 C.F.R. § 405.1875.  In addition, the case is inapposite because it involves an appeal in which the provider did not identify any audit adjustment made by the intermediary for any of the issues appealed.  That is certainly not the case in the appeal by Houston Heights.

First, as noted, a provider that has filed a cost report with its fiscal intermediary may obtain a hearing before the Board if it "is dissatisfied with a final determination of . . . its fiscal intermediary . . . as to the amount of total program reimbursement due the provider . . . for the period covered by such report . . . ." 42 U.S.C. § 1395oo(a)(1)(A)(i).  In the instant case, the Intermediary adjusted one line of the CIB calculation on Plaintiff's cost report, but failed to populate another, directly resulting in the denial of the CIB.  (SMF ¶¶ 15, 16.)  This adjustment was part of the Intermediary's determination of total Medicare reimbursement due the hospital and was conveyed to Houston Heights by way of the NPR dated February 28, 2002.  (SMF ¶ 19.)

The NPR constitutes the final determination of the Intermediary.  Board jurisdiction arises under section 1395oo and the appeals process is set forth at 42 C.F.R. §§ 405.1801 – 405.1889.  In particular, the Board regulations state that a provider has a right to a PRRB hearing if an "intermediary determination" has been made, the provider has filed a written request for a hearing pursuant to 42 C.F.R. § 405.1841, and the amount in controversy exceeds $10,000. 42 C.F.R. § 405.1835(a).  For purposes of appeal to the PRRB, "intermediary determination" is defined as "a determination of the amount of total reimbursement due the provider" and is deemed to be synonymous with the terms "intermediary's final determination" as that term is used in 42 U.S.C. § 1395oo.  42 C.F.R. § 405.1801(a).  Neither the Intermediary nor the Secretary dispute that the Plaintiff has satisfied the latter two requirements of the regulation: The written request for hearing was timely filed and the amount in controversy, approximately $535,000 of Medicare reimbursement impact, clearly exceeds the $10,000 threshold.  (SMF ¶¶ 18, 21.)

Nonetheless, the Secretary appears to contend that the determination of total Medicare reimbursement, as reflected in the NPR, did not constitute the Intermediary's <u>final</u> determination and, therefore, Houston Heights prematurely sought review by the Board. <u>See</u> Decision of the Administrator, AR at 6 (stating that "[t]he statute and the regulation contemplate an Intermediary final determination as a prerequisite to Board jurisdiction").  In support of this assertion, the

Secretary points to two alternative, but not mandatory, avenues of redress that providers may theoretically take prior to, or in lieu of, requesting a hearing before the Board.

The first alternative proffered by the Secretary is that Houston Heights could have requested a reopening of its cost report from the Intermediary pursuant to 42 C.F.R. § 405.1885(a).  Requesting a reopening by the Intermediary, however, is not a mandatory prerequisite to Board review under the statute and regulations. See 42 C.F.R. § 405.1835 (establishing right to Board hearing); id. § 1885 (setting forth requirements for reopening a determination or decision of the fiscal intermediary).  Furthermore, the decision to grant the provider's request to reopen a cost report is a matter *solely within the discretion of the intermediary* and it is subject to neither administrative nor judicial review. Your Home Visiting Nurse Servs. v. Shalala, 525 U.S. 449, 452-53 (1999) (emphasis added).  Accordingly, the fact that the regulation permits a provider to request a reopening of its cost report does not establish that a provider must request a reopening prior to seeking Board review.

The Secretary also notes that Houston Heights could have requested permission from the Intermediary to file an amended cost report "prior to the issuance of the NPR."  See Decision of the Administrator, AR at 7; see also Medicare Provider Reimbursement Manual ("PRM" or the "Manual"), CMS Pub. 15-2, § 2931.2 (discussing requirements and criteria for a provider's filing of an amended cost report).  A provider's ability to file an amended cost report is permissive, not mandatory, and the intermediary may refuse to accept the amended cost report under certain circumstances.  Consequently, there is absolutely no requirement that a provider such as Houston Heights file an amended cost report in order to preserve its right to appeal before the Board pursuant to 42 C.F.R. § 405.1835.

Finally, the NPR issued to Houston Heights for FYE August 31, 1999 expressly states that "[i]f you disagree with our determination, you have a right to request a hearing in accordance with 42 C.F.R. 405.1801 – 405.1889."  (SMF ¶ 20.)  The NPR further states that "[a]

Provider Reimbursement Review Board (PRRB) Hearing may be requested if the Amount of Program Reimbursement in controversy is at least $10,000." (SMF ¶ 20.) The Intermediary also includes the following proviso in the NPR: "Keep in mind that even though we may be working with you on an issue, you must file a formal appeal to protect your rights." (SMF ¶ 20.) The Intermediary recognized from the outset that Houston Heights had a legal right to file a request for a PRRB hearing and expressly indicated that in the NPR.

In sum, Houston Heights properly exercised its right to request a hearing before the Board because it was dissatisfied with the Intermediary's determination not to award a CIB, as reflected in the NPR dated February 28, 2002. Although Houston Heights might have considered other avenues of redress prior to seeking Board review, it clearly was not required to do so under applicable law. Furthermore, the Intermediary's instructions in the NPR expressly state that Houston Heights has right to request a Board hearing and, in fact, urge the Hospital to file a formal appeal to protect its rights under those regulations. Accordingly, there were no mandatory administrative remedies for Houston Heights to exhaust prior to requesting a hearing before the PRRB. The Board properly exercised its statutory jurisdiction in granting the appeal request by Houston Heights. Thus, Houston Heights has satisfied the Medicare requirements for Board review pursuant to 42 U.S.C. § 1395oo and 42 C.F.R. § 405.1835 and the Decision of the Administrator should be overturned.

### B.    Houston Heights is Eligible For a Continuous Improvement Bonus

There is no dispute that Houston Heights kept its costs-per-discharge under the specified limits set forth by the CIB statute and regulations, exactly as Congress had intended and for which it provided a CIB incentive. (SMF ¶ 12.) The only question is whether Houston Heights is eligible to receive a CIB based on whether the hospital received payments as a PPS-exempt hospital for "at least 3 full cost reporting periods" prior to the cost reporting period ending August 31, 1999. 42 U.S.C. § 1395ww(b)(2)(B)(i); see also 42 C.F.R. 413.40(b).

Houston Heights, in full compliance with Medicare cost reporting requirements and with the approval of the Intermediary when cost report cycles were changed (due to adoption of a new accounting period fiscal year-end and a change of ownership), submitted complete cost reports as a PPS-exempt hospital for fiscal years ending:  (1) February 29, 1996, (2) February 28, 1997, (3) August 31, 1997, and (4) July 31, 1998.  Based on these four complete cost reports, totaling 41 months in length, the Board unanimously determined that Houston Heights submitted at least three complete cost reports prior to the fiscal year at issue and therefore earned a CIB.  See Provider Reimbursement Review Board Decision No. 2005-D38, AR at 36.  In so holding, the Board correctly concluded that Congress' purpose is clear: it intended that providers that kept costs below certain limits for at least 36 months could qualify for a CIB.  AR at 36. Furthermore, the Board rejected the Intermediary's assertions that calculating the CIB based upon Houston Heights' prior cost reports would be unfair to other providers, particularly in light of the fact that the Hospital satisfied the cost-saving requirements for a total of 41 months.  AR at 36.

The Secretary does not dispute that Houston Heights maintained its costs-per-discharge under the limits prescribed in the CIB statute and regulations for the period in question.  (SMF ¶ 12.)  The Secretary nevertheless reversed the Board's decision and denied Houston Heights a bonus.  The Secretary's denial is based solely on its contention that Houston Heights is not eligible for a CIB because not all of the cost reports submitted were twelve months in length, arguing that "full cost reporting periods" means 12-month periods.  The Secretary acknowledges that a "full cost reporting period" is not defined by the CIB statute or regulations, yet insists the terms "full 12-month cost reporting period" and "full cost reporting period" are used interchangeably in Medicare regulations and guidance.  The provisions cited by the Secretary, however, provide no support for the contention that Congress intended for a provider that controlled its costs more effectively than required by the CIB bonus calculation formula for more than 36 months should be disqualified simply because some of its cost reporting periods were

less than 12 months in length.  We respectfully submit that the Secretary's interpretation of the CIB statute and regulation to unfairly deny Houston Heights the bonus it earned is unreasonable and must be set aside.

### 1.     Full Cost Reporting Periods are Not Necessarily Twelve Months in Length

Contrary to what the Secretary suggests, it is far from implicit that the undefined term "full cost reporting period" equals 12 months.  Rather,"[c]ost reports can cover varying lengths of time.  Therefore, the definition of a cost reporting period is the time period covered by a cost report."  Parkview Medical Assoc., L.P. v. Shalala, 1997 WL 470107 at *9 (D.D.C. 1997). Because the statute does not compel HHS to require all cost reports to cover 12 consecutive months, the regulations state that each provider of services is required to submit "periodic reports of its operations that *generally* cover a consecutive 12-month period of the provider's operations."  42 C.F.R. § 413.24(f) (emphasis added).

As the District Court for the District of Columbia has pointed out, the use of the term "generally" implies that there might be situations where it would be appropriate for cost reports to cover periods other than 12 months.  See Parkview, supra.   Some of these situations include when a provider changes its cost reporting period or undergoes a change in ownership, as Houston Heights did.  See 42 C.F.R. §§ 413.24(f)(3); 413.24(f)(1).  Accordingly, 6-month, 11-month, and 13-month cost reporting periods may also be "full cost reporting periods" for purposes of awarding Houston Heights the CIB it earned.

### 2.     Other HHS Regulations Do Not Equate "Full Cost Reporting Periods" with "Twelve-Month Periods"

The Secretary attempts to bolster his interpretation of "full" to mean "12 months" by pointing to several other regulations, unrelated to the CIB, that refer to "full" cost reports. See Decision of the Administrator, AR at 7-8 (citing to 42 C.F.R. §§ 412.30(a), 412.30(b)(4), & 413.40(b)(1)).  Notably, all but one of the regulations cited in the Decision of the Administrator

modify "full" cost report with the phrase "12-month."[3]  This suggests that "full" does not

necessarily mean 12 months in length, as the Secretary maintains, because the description of a

cost reporting period as both "full" and "12-month" would be redundant and unnecessary.  In

certain cases, HHS purposefully chose to modify "full cost reporting period" with "12-month,"

because an agency "is presumed to act intentionally and purposely when it includes language in

one section but omits it in another."  Estate of Bell v. Commissioner, 928 F.2d 901, 904 (9th Cir.

1991) (referring to rule of statutory construction). See Burns v. Barnhart, 312 F.3d 113, 125 (3d

Cir. 2002) ("The basic tenets of statutory construction hold true for the interpretation of a

regulation . . . ."); United States v. Hassanzadeh, 271 F.3d 574, 582 (4th Cir. 2001) (courts

"construe a statute or regulation so that . . . no part . . . is superfluous") (internal quotations and

citation omitted).  Therefore, the juxtaposition of "12-month" with "full" in two of the

regulations cited by the Secretary actually supports Plaintiff's position that "full cost reporting

period" refers to complete cost reporting periods of varying lengths, not solely 12-month periods.

In addition, the Secretary contends that the reference in 42 C.F.R § 413.40(b)(1) to a

"short reporting period" being "fewer than 12 months" is dispositive with regard to what

constitutes a "full cost reporting period." AR at 7-8.  As the Secretary acknowledges, however,

this regulation describes the *base period* for determining a provider's target amount, a matter

which is "not at issue in this appeal."  AR at 8.  Moreover, this provision neither states nor

implies that the concept of "short reporting period" applies to any other Medicare regulations

governing cost-based reimbursement, such as the CIB provisions at issue.  Instead, the regulation

simply states that a provider's base period must be a cost reporting period of "at least 12 months"

and does not state that subsequent cost reporting periods -- including "full cost reporting periods"

as required by the CIB statute and regulation -- must also be at least (or exactly) 12 months in

---

3       42 C.F.R. § 412.30(a) and 42 C.F.R. § 412.30(b) both refer to "full 12-month cost
        reporting period . . . .", whereas 42 C.F.R. § 413.40(b)(1)  refers to a "cost reporting
        period of at least 12 months . . . ."

length.  Consequently, the Secretary's reliance on the above-referenced Medicare regulations to deny Houston Heights a CIB is unreasonable.

### 3.    Medicare Guidance Permits Full Cost Reporting Periods Other Than Twelve Months in Length

The Secretary also cites to a Medicare manual provision in contending that "full cost reporting period" means only a 12-month period for purposes of the CIB statute and regulation. AR at 7 (citing PRM § 102).  The Secretary, however, quotes only the first sentence of the relevant section and omits a significant provision that suggests "full cost reporting periods" may be more or less than 12 months.  In particular, the Secretary refers to the PRM's declaration that "Medicare requires submission of annual reports covering a 12-month period of operations based upon the provider's accounting year." AR at 7 (quoting PRM § 102).  However, the following is the entire sentence referenced by the Secretary, including the explanatory paragraph omitted by the Secretary:

> For cost reporting purposes, Medicare requires submission of annual reports covering a 12-month period of operations based upon the provider's accounting year.
>
> The provider may select any annual period for Medicare cost reporting purposes regardless of the reporting period it uses for other programs. *Once a provider has made a selection and reported accordingly, it is required thereafter to report annually for periods ending as of the same date unless the intermediary approves a change in the provider's reporting period.*

PRM § 102 (emphasis added).  As the text of the Manual indicates, providers will generally maintain annual cost reporting periods that end on the same date and, accordingly, will typically have cost reporting periods of the same length, i.e. 12 months.  However, the PRM expressly contemplates that a provider may change its cost reporting periods with the permission of its intermediary.  A change to a cost reporting end date that is earlier in the year than the previous end date will necessarily result in a one-time cost reporting period of less than 12 months; conversely, a change to a later date will result in a initial cost reporting period longer than 12 months.  Importantly, the Manual in no way categorizes these transitional periods as anything

other than "full cost reporting periods", despite that it expressly considers that such changes may occur.  Moreover, this view comports with the conclusion of this Court in Parkview that there are situations where it would be appropriate for cost reports to cover periods other than 12 months. See Parkview, supra.

As explained above, this is precisely what occurred when Houston Heights changed its cost reporting periods to accommodate the shift in its fiscal year-end and as required by Medicare in connection with its change of ownership.  (SMF ¶¶ 9, 10.)  These changes, undertaken with the permission of the Intermediary in full accordance with the applicable regulations, resulted in the 6-month cost reporting period ending August 31, 1997, the 11-month period ending July 31, 1998, and the 13-month period ending August 31, 1999.  See 42 C.F.R. § 413.24(f)(1) (cost report required when change of ownership occurs); 42 C.F.R. § 413.24(f)(3) (change to cost reporting period permitted for good cause).  Contrary to the assertions of the Secretary, however, the cited Manual provision does not suggest that these cost reporting periods are not "full cost reporting periods" simply because they were more or less than 12 months in length.  Rather, the Manual confirms that such one-time cost periods are permitted under the Medicare program and are effectively no different than cost reporting periods that end on the same date each year.  Consequently, the Secretary's reliance on the above-referenced Manual provision is misplaced and does not support the conclusion reached in the Decision of the Administrator.

### 4.    Awarding a CIB Based Upon Cost Reporting Periods Other Than Twelve Months in Length Is Reasonable and Permissible

In reaching its final decision that Houston Heights is entitled to a CIB, the Board held that basing the CIB upon Houston Heights' prior cost reporting periods would be neither impossible nor impermissible under the statute and regulation.  In particular, the Board accepted Houston Heights' suggestion that the Intermediary could add the last month from the 6-month cost reporting period ending August 31, 1997 to the 11-month cost reporting period ending July

31, 1998 to create a "new 12-month cost period". Thus, this amalgamated cost period could be considered along with the two preceding 12-month cost reporting periods as constituting "at least 3 full cost reporting periods" necessary for CIB eligibility. AR at 36.

Alternatively, the 6-month cost report for fiscal year end August 31, 1997, together with the 11-month cost report for fiscal year end July 31, 1998, could be considered along with the two previous 12-month cost report periods for a total of "at least 3 full cost reporting periods," as required by statute. Under this methodology, the Intermediary could use the per-discharge amount from the combined 17-month period to calculate the bonus. For the same reasons that a 12-month cost reporting period tends to present a cumulative and more balanced view of the provider's actual costs-per-discharge in the long term, considering for CIB eligibility purposes two costs reports, totaling 17-months in length, would not result in any unfairness or inequity.[4]

Moreover, each of the Hospital's four cost reports submitted prior to the cost reporting period ending August 31, 1999 were complete or "full," as required by statute. There can be no dispute that the 6-month and 11-month cost reports were complete and lawful under each year's particular circumstances, the filing of such reports being specifically authorized by regulation due to a change in fiscal year end and a change in ownership. See 42 C.F.R. §§ 413.24(f)(1), 413.24(f)(3). These cost reports cover a total of 41 months – five additional months of time than would have been covered had the hospital submitted three 12-month cost reports. Significantly, by submitting more than the required minimum necessary for CIB eligibility, Houston Heights has provided a complete picture of cost savings over the 41-month period in question. The Secretary cannot reasonably contend that the Hospital is any less deserving of the CIB than a

---

[4]    In the proceedings below, the Intermediary contended that a 12-month assessment of a cost-based provider presents a more accurate representation of that provider's actual costs because data obtained from lesser periods or certain times of the year – such as the year-end holidays - could result in a skewing of the discharge data. See Intermediary's Supplemental Submission, AR at 201.

provider that submits three 12-month cost reports for a total of 36 months. Houston Heights, having met the eligibility requirements for a CIB through the submission of at least three full and complete cost reports prior to the fiscal year at issue, and which total more than 36 months in length, cannot be denied a bonus.

## VII.    CONCLUSION

For the foregoing reasons, Houston Heights is entitled to summary judgment as a matter of law. The Decision of the Administrator, which constitutes the final administrative decision of the Secretary, is invalid because: (1) it is an unlawful application of the clear and unambiguous statutory requirements for Board jurisdiction set forth at 42 U.S.C. § 1395oo; and (2) it is a plainly erroneous and unreasonable interpretation of "full cost reporting period" as that term is used in the CIB eligibility criteria set forth at 42 U.S.C. § 1395ww(b)(2)(B)(i) and 42 C.F.R. § 413.40 under the cost-containment incentive program designed by Congress. Accordingly, Houston Heights' motion for summary judgment should be granted and the Decision of the Administrator vacated such that the Intermediary is ordered to calculate and pay the Plaintiff its CIB for FYE August 31, 1999.

Respectfully submitted,

_/s/  Andrew L. Hurst_
Andrew L. Hurst, D.C. Bar No. 455471
Kevin R. Barry
Drew W. Carlson
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 -- East Tower
Washington, D.C. 20005-3317
(202) 414-9200

Dated:  September 8, 2006