UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SELECT SPECIALTY HOSPITAL-<br>HOUSTON HEIGHTS,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL O. LEAVITT[1],<br>Secretary of Health and Human Services,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)   Case No. 1:05CV01791 (RBW)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE ISSUE**

Defendant Michael O. Leavitt, Secretary of Health and Human Services, hereby submits, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.1(h), the following statement of material facts as to which there is no genuine dispute:

1. Select Specialty Hospital-Houston Heights ("Select Specialty") is a Medicare certified Long Term Care Hospital ("LTCH"), located in Houston, Texas. See Certified Administrative Record for Select Specialty Hosp.-Houston Heights v. Thompson, 1:05CV01791 (RBW) (D.D.C. filed Sept. 9, 2005) ("AR") 2, 106, 165, 301. Select Specialty opened on September 1, 1994, and was certified by Medicare on March 1, 1995. See AR 2, 139 (transcript page 66), 168; but see AR 301 (cost report, indicating that it was certified on "9/1/1994").

2. During the period relevant to this action, Select Specialty was a provider of services under the federal Medicare program. See AR 2, 32, 106, 164. During the period relevant to this

---

[1] Michael O. Leavitt is substituted as Defendant pursuant to Fed. R. Civ. Pro. 25(d)(1).

appeal, Select Specialty's fiscal intermediary was Mutual of Omaha. See AR 162, 164-65, 175, 195.

3. Select Specialty submitted its first cost report as a LTCH to its fiscal intermediary, for the 12 month period from March 1, 1995 through February 29, 1996. See AR 2, 168, 199, 281.

4. Select Specialty submitted its second cost report as a LTCH for the 12 month period from March 1, 1996 through February 28, 1997. See AR 2, 168, 199, 281.

5. Select Specialty submitted a third cost report which only covered a 6 month period, from March 1, 1997 through August 31, 1997. See AR 2, 168, 199, 281. This filing of a cost report for only a 6 month period was apparently the result of a change in the hospital's fiscal year end. See AR 2, 281.

6. Select Specialty submitted a fourth cost report which only covered an 11 month period, from September 1, 1997 through July 31, 1998. See AR 2-3, 168, 281. A change in the hospital's ownership is apparently what prompted Select Specialty to filing a cost report for only an 11 month period. AR 2-3, 281. Select Specialty submitted a fifth cost report for a 13 month period, from August 1, 1998 through August 31, 1999. See AR 3, 168, 281.

7. Select Specialty filed its fifth cost report, for the cost reporting period ending August 31, 1999, without in any way claiming a Continuous Improvement Bonus ("CIB"). See Plaintiff Houston Heights' Memorandum In Support of its Motion For Summary Judgment (Docket No. 14-2) ("Pl.'s Opening Brf.") at 1, 7, 12; AR 3, 6, 26, 33, 106, 125, 127, 130 (transcript page 31), 131 (transcript pages 34-35), 132, 134 (transcript page 45), 151-52, 158, 290.

8. Specifically, Select Specialty did not complete or "populate" either one of the two lines in its cost report which relate to the CIB, lines 58.01 (the trended cost line) or line 58.02

(the expected cost line) of Worksheet D-1, Part II of CMS form 2552-96. See AR 3, 6, 33, 158-59, 290 (Select Specialty's Supplemental Submission, acknowledging that "Houston Heights did not, however, file its cost report [for the cost reporting period ending August 31, 1999] with either the trended costs or expected costs populated").

    9. Data contained in line 58.01 and 58.02 are used by Intermediaries to determine whether a hospital is eligible for a CIB. See AR 3, 6, 33, 192-93, 200, 238. Even if a hospital is eligible for a CIB, unless it inputs data in both lines 58.01 and 58.02, the Intermediary has no way of computing a CIB bonus (on line 58.03 of that same cost report), or indeed of knowing that the hospital intends to claim a CIB. See AR 3, 6, 33, 192-93, 200, 238; 42 U.S.C. §§ 1395ww(b)(2)(A), 1395ww(b)(2)(E) (indicating that the CIB which is to be awarded to an eligible LTCH is a function of the target amount and the expected costs).

    10. Select Specialty did not complete or "populate" line 58.03. See AR 3, 6, 127, 158.

    11. Select Specialty did not in any way claim a CIB in connection with any of its earlier cost reports. See, e.g., AR 347 (cost report for period ending August 31, 1997, listing "[$]0" in lines 58.01, 58.02, and 58.03), 397 (cost report for period ending August 31, 1998, listing "[$]0" in lines 58.01, 58.02, and 58.03).

    12. The Intermediary reviewed Select Specialty's cost report for the cost reporting period ending August 31, 1999. See AR 3, 106, 165, 618-19.

    13. On February 28, 2002, the Intermediary issued an NPR for the cost reporting period ending August 31, 1999. See AR 3, 164, 180, 618-27. The Intermediary did not award Select Specialty a CIB in that NPR. Id. Although the Intermediary made an adjustment in its NPR to

line 58.02 (the expected cost line), it did not complete line 58.01 (the trended cost line) or line 58.03 (the calculation of a CIB bonus).  See AR 3, 180, 616, 618-20, 626.

    14.  Although it had not claimed a CIB anywhere in its cost reports, Select Specialty subsequently apparently became convinced that it was entitled to one.  See AR 131 (transcript pages 34-35), 151, 615-16.

    15.  On August 22, 2002, nearly six months after the filing of its cost report, Select Specialty requested a hearing before the Provider Reimbursement Review Board ("PRRB") concerning two issues, one of which concerned the fact that the Intermediary had not awarded it a CIB for its fiscal year ended August 31, 1999.  See AR 614-16.

    16.  Specifically, in relevant part, Select Specialty complained that the Intermediary had "adjusted the expected costs on Worksheet D-1, line 58.02," but "did not populate the trended costs on Worksheet D-1, line 58.01," and "respectfully request[ed]" that the PRRB "populate Worksheet D-1, line 58.01 so that the CIB calculation can be completed."  See AR 615-16.

    17.  The other issue concerned an intermediary disallowance based on the so-called Provider Statistical and Reimbursement System.  See AR 615.  This issue was subsequently resolved by the parties during the PRRB proceedings, see AR 166, 279, 601, and is not relevant to this action.

    18.  During the PRRB hearing, Select Specialty's witness acknowledged that Select Specialty could have made a claim for the CIB in its cost report and that nothing had prohibited or barred Select Specialty from claiming a CIB.  See, e.g., AR 26, 127, 130 (transcript pages 30-31), 131 (transcript page 34), 131 (transcript pages 34- 35), 134 (transcript page 45), 134

(transcript pages 47-48). The Intermediary's representative made the same point during the PRRB hearing. See, e.g., AR 126 (transcript page 13).

19. On May 10, 2005, the PRRB issued a decision in which it found that it had jurisdiction over the CIB issue and that Select Specialty qualified for a CIB. See AR 28-37. One PRRB member dissented from the PRRB's holding on jurisdiction. See AR 37.

20. On May 20, 2005, the Intermediary requested that the Administrator review both the jurisdictional and merits portions of the PRRB decision. See AR 26-27.

21. On June 22, 2005, Select Specialty filed comments in support of an affirmance of the PRRB's decision. See AR 13-23.

22. On June 23, 2005, CMS filed comments in which they urged the Administrator to reverse the PRRB's conclusions regarding jurisdiction and the merits. See AR 10-12.

23. On July 11, 2005, the Administrator issued a decision reversing the PRRB's decision, and concluding that the PRRB did not have jurisdiction over the CIB issue and that, in any event, Select Specialty did not qualify for a CIB. See AR 2-9.

24. The Secretary's manual provisions distinguish between "full" 12 month cost reports and "shorter" cost reports. See, e.g., AR 191, 198.

25. One of the reasons the Secretary required three prior full cost reporting periods in this case was to ensure that the operating costs of a new provider were stabilized and representative of the provider's operating costs. See, e.g., AR 138, 140 (transcript pages 72), 200.

26. Per discharge amounts can vary significantly from month to month. See, e.g., AR 138, 140 (transcript pages 72), 141 (transcript page 73), 142 (transcript pages 77-80), 200-01, 254-56.

27.  Month to month variation in per discharge amounts is reduced if a full twelve-month cost reporting period is used.  See, e.g., AR 138, 140 (transcript pages 72), 142 (transcript pages 77-80), 201-02.

28.  A trended cost amount calculated from a short period cost report might not be representative of the provider's operating costs.  See, e.g., AR 138, 140 (transcript pages 72), 141 (transcript page 73), 142 (transcript pages 77-80), 200.  One reason that the Secretary believes that hospitals should not be allowed to use a short period cost report to determine their trended costs is that it may not be representative of their operating costs.  See, e.g., AR 138, 140 (transcript pages 72), 141 (transcript page 73), 142 (transcript pages 77-80), 200-02.

29.  Short-cost reporting periods, which could range from 1 to 11 months, may not be representative of a Provider's operating costs.  See, e.g., AR 138, 141 (transcript pages 73), 142 (transcript pages 77-80), 200-02.

30.  The Intermediary's representative noted during the PRRB hearing that it "would not be just or accurate to allow some Providers to use a short period cost report, which could be one month, to determine their trended cost amount, when others are using a 12-month cost reporting period."  See AR 141 (transcript pages 74-75).  He also testified during that hearing that "if short period cost reporting periods are considered full, it would produce an inequity" inasmuch as "[i]n this situation, [Select Specialty]'s three cost reporting periods would total only 29 months" while "other providers would be required to provide cost reports representing 36 months."  See AR 141 (transcript pages 74-75).

31.  The Secretary's regulations and manual provisions distinguish between "full" 12 month cost reports and "shorter" cost reports.  See, e.g., AR 191, 197-99, 217-18, 227-29, 231-43.

          Respectfully submitted,

          / s /
          JEFFREY A. TAYLOR,
          United States Attorney
          D.C. Bar No. 498610

          / s /
          MEGAN L. ROSE
          Assistant United States Attorney
          N.C. Bar No. 28639
          Civil Division
          555 Fourth Street, N.W.
          Washington, D.C. 20530
          (202) 514-7220/FAX: (202) 514-8780

          / s /
          JONATHAN C. BRUMER
          D.C. Bar No. 463328
          U.S. Department of Health and Human
            Services
          Office of the General Counsel
          Centers for Medicare and Medicaid Services
            Division
          330 Independence Ave., S.W.
          Cohen Building, Room 5344
          Washington, D.C. 20201
          (202) 205-8703/FAX: (202) 401-1405