# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

### Civil Division

_____
)
**SELECT SPECIALTY HOSPITAL** )
**HOUSTON HEIGHTS,** )
 )
 **Plaintiff,** )
 )
 **v.** )     Case No.  1:05CV01791 (RBW)
 )
**MICHAEL O. LEAVITT, SECRETARY** )
**UNITED STATES DEPARTMENT OF** )
**HEALTH AND HUMAN SERVICES,** )
 )
 **Defendant.** )
_____)

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
## FOR SUMMARY JUDGMENT AND OPPOSITION TO
## DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

Andrew L. Hurst, D.C. Bar No. 455471
Kevin R. Barry
Drew W. Carlson
REED SMITH LLP
1301 K Street, N.W.
Suite 1100, East Tower
Washington, D.C. 20005
(202) 414-9200

Counsel for Plaintiff

Dated:  November 29, 2006

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ...............................................................................................1

II.     STANDARD OF REVIEW ..............................................................................2

III.    ARGUMENT......................................................................................................6

        A.      Plaintiff Satisfied the Statutory Requirements for Board Jurisdiction Under the Statute, and the Secretary Arbitrarily and Capriciously Overturned the Decision of the PRRB ...........................................................6

                1.      <u>Bethesda</u> Holds that Section 1395oo(a) Is to Be Viewed Broadly and Is Therefore Not Subject to the Limitations Imposed by Defendant .......................................................................6

                2.      Case Law in the D.C. Circuit, Undisturbed by <u>Bethesda</u>, Supports Plaintiff's Position ............................................................9

                3.      Defendant Improperly Foreclosed the Board's Statutory Jurisdiction to Hear Plaintiff's Appeal ..........................................10

                4.      The Decisions Relied Upon by the Secretary Are Inapposite to Plaintiff..............................................................13

        B.      Defendant's Application of the CIB Statute and Regulation was Plainly Erroneous and Inconsistent with Congress' Intent in Providing the CIB Cost-Saving Incentive...................................................16

IV.     CONCLUSION.................................................................................................18

# TABLE OF AUTHORITIES

**Case:**                                                                              **Page(s):**

Athens Comm'y Hosp., Inc. v. Schweiker,
    743 F.2d 1 (D.C. Cir. 1984)......................................................................4, 9, 12

Battle Creek v. Leavitt,
    5:05CV00053 (E.D. Mich. Oct. 26, 2006).................................................14, 15

Bethesda Hosp. Ass'n v. Bowen,
    485 U.S. 399 (1988)..................................................................................... *passim*

Beverly Enters. v. Califano,
    446 F. Supp. 599 (D. D.C. 2000)...........................................................................2

Chevron U.S.A. Inc. v. Natural Res. Def. Council,
    467 U.S. 837 (1984)...........................................................................................2, 3

District of Columbia Hosp. Ass'n. v. D.C.,
    224 F.3d 776 (D.C. Cir. 2000).............................................................................2, 5

Girling Health Care. v. Shalala,
    85 F.3d 211 (5th Cir. 1996) .................................................................................2

HCA Health Servs. v. Shalala,
    27 F.3d 614 (D.C. Cir. 1994).............................................................................3, 10

Homan & Crimen, Inc. v. Harris,
    626 F.2d 1201 (5th Cir. 1980) .............................................................................3

Little Co. of Mary Hosp.and Health Care Ctrs. v. Shalala,
    24 F.3d 984 (7th Cir. 1994) ...........................................................4, 13, 14, 15

Little Co. of Mary Hosp.and Health Care Ctrs. v. Shalala,
    165 F.3d 1162 (7th Cir. 1999) ....................................................................14, 15

MaineGeneral Med. Ctr. v. Shalala,
    205 F.3d 493 (1st Cir. 2000)..................................................................... *passim*

Marymount Hosp. v. Shalala,
    19 F.3d 658 (D.C. Cir. 1994)...............................................................................2

Mineral Policy Ctr. v. Norton,
    292 F. Supp. 2d 30 (D. D.C. 2003).......................................................................2

Nat'l Med. Enters. v. Shalala,
        826 F. Supp. 558 (D. D.C. 1993) ...................................................................................2

Newbury Local Sch. Dist. Bd. of Educ. v. Geauga Co. Metro Hous. Auth.,
        732 F.2d 505 (6th Cir. 1984) .......................................................................................5

Select Specialty Hospital-Houston Heights v. Mut. of Omaha,
        PRRB Hearing Dec. No. 2005-D38 (2005) .................................................................16

S.G. Loewendick & Sons, Inc. v. Reich,
        70 F.3rd 1291 (D.C. Cir. 1995)....................................................................................3

St. Luke's Hosp. v. Sec'y of HHS,
        810 F.2d 325 (1st Cir. 1987)................................................................................11, 12

St. Mary of Nazareth Hosp. Ctr. v. Schweiker,
        741 F.2d 1447 (D.C. Cir. 1984) .................................................................................4, 9

Thomas Jefferson Univ. Shalala,
        512 U.S. 504 (1994)......................................................................................................3

Universal Camera Corp. v. NLRB,
        340 U.S. 474 (1951)......................................................................................................2

Washington Hosp. Ctr. v. Bowen,
        795 F.2d 139 (D.C. Cir. 1986) ...................................................................3, 4, 5, 9, 10

**Statutes, Regulations, and Other Authorities:**                    **Page(s):**

5 U.S.C. § 706(2)(A) ....................................................................................................2

42 U.S.C. § 1395oo...............................................................................................1, 3, 6, 18
        § 1395oo(a) ...................................................................................... *passim*
        § 1395oo(d) ...................................................................................6, 7, 11
        § 1395ww(b)(2) ...............................................................................1, 17
        § 1395ww(b)(2)(B)(i) .....................................................................5, 17

Fed. R. Civ. P. 56(c) ....................................................................................................2

Balanced Budget Act of 1997, Pub. L. No. 105-33 (1997) ........................................17

42 C.F.R. § 405.1835...................................................................................................16
        § 412.60(d) ....................................................................................13
        § 413.40..........................................................................................19
        § 413.40(d)(5) .............................................................................1, 5, 17

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Select Specialty Hospital-Houston Heights ("Houston Heights" or "Plaintiff") is a long-term acute care hospital ("LTCH") participating in the Medicare program.  In this action, Plaintiff challenges the final administrative decision of the Secretary of the United States Department of Health and Human Services ("HHS"), Michael O. Leavitt ("Secretary" or "Defendant"), in overturning a final decision by the Provider Reimbursement Review Board ("PRRB" or the "Board") which held that Plaintiff was entitled to a continuing improvement bonus ("CIB") for its Medicare cost reporting period ending August 31, 1999.

Plaintiff maintains that Defendant's final agency decision to reverse the PRRB and to deny Plaintiff its eligibility for the CIB is unlawful and should be set aside.  Specifically, Plaintiff contests the Secretary's application of 42 U.S.C. § 1395oo, 42 U.S.C. § 1395ww(b)(2), and 42 C.F.R. § 413.40(d)(5) as arbitrary, capricious, contrary to law, and unsupported by the evidence in the record.  In the proceedings below, the Board determined that it properly had jurisdiction to hear Plaintiff's appeal and that Houston Heights had earned the bonus by successfully controlling its costs below statutorily-established targets for more than a three-year period, as required.

There are no material facts in dispute in this matter.  See Plaintiff Houston Heights' Statement of Material Facts Not in Dispute ("Pl.'s SMF") (Docket No. 14-3); Defendant's Statement of Material Facts Not in Genuine Issue ("Def.'s SMF") (Docket No. 16-2). Accordingly, this Court should grant Plaintiff's Motion for Summary Judgment, filed with this Court on September 8, 2006; order Plaintiff's fiscal intermediary, Mutual of Omaha ("Mutual" or the "Intermediary"), to calculate the CIB for FYE August 31, 1999, and to pay that amount to

Plaintiff; award Plaintiff its legal fees and costs of suit; and grant such other relief as the Court may consider appropriate.

## II.   STANDARD OF REVIEW

The final administrative decision of the Secretary must be overturned because it is an arbitrary, capricious, and unlawful application of 42 U.S.C. § 1395oo(a), the statutory provision governing the jurisdiction of the PRRB.  See Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A).  The parties concur that there are no material facts in dispute in this matter.  See Pl.'s SMF; Def.'s SMF.  Accordingly, Plaintiff is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); District of Columbia Hosp. Ass'n. v. D.C., 224 F.3d 776, 779 (D.C. Cir. 2000).

As this Court has recognized, a reviewing court is to resolve questions of law after first determining the correct legal standard to apply.  Beverly Enters. v. Califano, 446 F. Supp. 599, 604 (D. D.C. 1978) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951)).  That standard is whether the Secretary's final determination was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A); see id. (applying the arbitrary and capricious standard of review); see also Nat'l Med. Enters. v. Shalala, 826 F. Supp. 558, 561 (D. D.C. 1993) (same), aff'd, 43 F.3d 691, 692 (D.C. Cir 1995); Marymount Hosp. v. Shalala, 19 F.3d 658, 661 (D.C. Cir. 1994).  Judicial review has "the function of determining whether the administrative action is consistent with the law - that and no more."  Girling Health Care v. Shalala, 85 F.3d 211, 215 n. 7 (5th Cir. 1996) (also applying the arbitrary and capricious standard of review).

Furthermore, Defendant's final determination in the proceedings below is not entitled to substantial deference under the standards enunciated in Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842 (1984) ("Chevron") and followed by this Court in Mineral Policy Ctr. v. Norton, 292 F. Supp. 2d 30, 37 (D.D.C. 2003).  See Chevron, 467 U.S. at 842 (holding that "[i]f the intent of Congress is clear, that is the end of the matter . . . .").  There is binding

precedent in this Circuit that clearly supports Plaintiff's position.  The Supreme Court, the Court

of Appeals for the District of Columbia Circuit, and other federal courts have specifically held 42

U.S.C. § 1395oo(a) to be clear and unambiguous.  Bethesda Hosp. Ass'n v. Bowen, 485 U.S.

399, 403 (1988) ("Bethesda") (analyzing the Secretary's interpretation of 42 U.S.C. 1395oo(a)

and concluding that it was not entitled to Chevron deference); Washington Hosp. Ctr. v. Bowen,

795 F.2d 139, 144 (D.C. Cir. 1986) ("Washington") (finding that the plain language of section

1395oo(a) controls, "obviating any need to decide whether the District Court or the Secretary has

the better of the deference debate"); see also MaineGeneral Med. Ctr. v. Shalala, 205 F.3d 493,

501 (1st Cir. 2000) ("MaineGeneral") (finding "Chevron abdication to the views of the agency

inappropriate on the matter.").

Defendant would have this Court ignore the binding precedent of Bethesda and

Washington in determining PRRB jurisdiction.  To do so would inappropriately afford great

deference to the Secretary's unlawful application of 42 U.S.C. § 1395oo in determining PRRB

jurisdiction.  In arguing that the "dissatisfaction" requirement of 42 U.S.C. § 1395oo(a) is

ambiguous and, therefore, that substantial deference should be given to the Secretary's decision

below, Defendant cites a number of court decisions involving statutes and regulations not at

issue in this appeal.[1]  Defendant also places unwarranted emphasis on two sentences of dicta in

Bethesda in an attempt to distinguish the rule of law actually established by the holding in that

case, which has been recognized in this Circuit.  See HCS Health Servs. v. Shalala, 27 F.3d 614,

621, n.4 (D.C. Cir. 1994) (observing that Bethesda "may have undercut the validity of the [pre-

---

[1]     See Memorandum of Points and Authorities in Support of Defendant's Cross Motion for
Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment
("Def.'s Opening Brf.") (Docket No. 16-1) at 14 (citing to Thomas Jefferson Univ. v.
Shalala, 512 U.S. 504, 512 (1994) (evaluating 42 C.F.R. § 413.85(c)); S.G. Loewendick
& Sons, Inc. v. Reich, 70 F.3rd 1291, 1294 (D.C. Cir. 1995) (ruling on 29 C.F.R. §§
1926.550(b)(2), 1926.550(g) (1994)); Homan & Crimen, Inc. v. Harris, 626 F.2d 1201,
1211 (5th Cir. 1980) (ruling on an issue involving 42 C.F.R. §§ 405.415(a)(2), 405.419,
and 405.429)).

Bethesda D.C. Circuit] holdings in St. Mary and Athens [II] which limited Board appeals from an NPR to cost items originally presented to the intermediary . . . .").  In effect, Defendant argues that this Court should disregard the holdings of Washington, Bethesda, and MaineGeneral and, instead, defer substantially to the Secretary's final decision that the PRRB lacks jurisdiction in this case based solely upon the Supreme Court's observation that the statute "might well" apply differently to "circumstances . . . not presented" in Bethesda.  485 U.S. at 405.  The language that Defendant relies upon is clearly dicta and does not inject ambiguity into the statute, especially with the facts presented in this case.[2]  MaineGeneral, 205 F.3d at 499 (finding that the Bethesda language relied upon by the Secretary is "explicitly dictum"); Little Co. of Mary Hosp. and Health Ctrs. v. Shalala, 24 F.3d 984, 993 ("Little Co. I") (construing the above-referenced Bethesda language as a "hint" and not as part of the Court's holding);[3] see Bethesda, 485 U.S. at 403 (holding that "[t]he plain meaning of the statute decides the issue presented").

    Furthermore, of critical importance here, the "circumstances . . . not presented" in Bethesda, to which the Court's comments applied there, are also not present before this Court. The language in Bethesda relied upon by Defendant does not contemplate a situation like the one in this case, where the Board accepted jurisdiction to resolve Plaintiff's dissatisfaction with an audit adjustment made to the section of Plaintiff's cost report pertaining to its eligibility for the CIB that failed to include the computations necessary to award reimbursement to which Houston Heights was entitled.  See Pl.'s Opening Brf, Part VI.A.1.  Even if this Court were to give some weight to the Court's dicta in Bethesda, the language is inapposite to the Plaintiff's appeal

---

[2]    Defendant recognizes that the Supreme Court's language upon which it relies is dicta. See Def.'s Opening Brf. at 20 (recognizing that the Bethesda Court "suggested that that the statutory 'dissatisfaction' requirement would not be met" for a "hypothetical provider who failed to claim reimbursement was [sic] available. . . .") (emphasis added).

[3]    Defendant relies heavily upon Little Co. I in its jurisdictional argument, yet ignores the Court of Appeals' recognition that the above-referenced Bethesda language is not part of the Supreme Court's holding in that case.  See Def.'s Opening Brf. at 25-27.

because the facts are not analogous.  Here, Plaintiff was dissatisfied with an actual audit adjustment made by the Intermediary to the CIB portion of the cost report as being incomplete and inappropriate.  Thus, Defendant's reliance on inapplicable dicta, rather than a clearly stated rule of law that the relevant jurisdictional provisions are unambiguous, does not support affording substantial deference to the Secretary's unlawful decision below.  Moreover, Defendant's application of 42 U.S.C. § 1395ww(b)(2)(B)(i) and 42 C.F.R. § 413.40(d)(5) in contending that Plaintiff in not entitled to a CIB is plainly erroneous and inconsistent with the intent of Congress and the regulatory scheme governing the CIB cost-savings incentive program, which was designed to reward providers, like Plaintiff, that maintain the prescribed cost savings for at least three years.  Thus, as Defendant effectively acknowledges, his interpretation of the CIB statute and regulation is not entitled to substantial deference. See Def.'s Opening Brf. at 14 (recognizing that the Secretary's interpretation of his own regulations is not entitled to deference when it is plainly erroneous and inconsistent.)

Accordingly, Plaintiff is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(c); District of Columbia Hosp. Ass'n., 224 F.3d at 779.  In finding for Plaintiff, this Court should first hold that 42 U.S.C. § 1395oo(a) is unambiguous in accordance with the decisions in Bethesda, Washington and MaineGeneral and that Defendant's application of 42 U.S.C. § 1395ww(b)(2)(B)(i) and 42 C.F.R. § 413.40(d)(5) is plainly erroneous and inconsistent with law; review the Defendant's actions without substantial deference; and ultimately set aside the final decision of the Secretary because it is arbitrary, capricious and invalid as a matter of law.  See Newbury Local Sch. Dist. Bd. of Educ. v. Geauga Co. Metro Hous. Auth., 732 F.2d 505, 508 (6th Cir. 1984).  The PRRB decided correctly:  it had jurisdiction to hear Plaintiff's appeal, and Plaintiff's effective cost control over a 41-month period entitled it, by statute, to the CIB bonus.

III.　　**ARGUMENT**

　　A.　　**Plaintiff Satisfied the Statutory Requirements for Board Jurisdiction Under the Statute, and the Secretary Arbitrarily and Capriciously Overturned the Decision of the PRRB**

　　　　In the Secretary's final decision, Defendant concluded that Plaintiff could not be "dissatisfied", as required by 42 U.S.C. § 1395oo(a), with the Intermediary's failure to award Plaintiff a CIB.  Consequently, Defendant reasoned, the Board did not have jurisdiction to hear Plaintiff's appeal.  The Secretary's analysis and conclusion with respect to Board jurisdiction under 42 U.S.C. § 1395oo is fundamentally flawed for four reasons.

　　　　1.　　**Bethesda Holds that Section 1395oo(a) Is to Be Viewed Broadly and Is Therefore Not Subject to the Limitations Imposed by Defendant**

　　　　First, Bethesda clearly holds that a provider may "claim dissatisfaction, within the meaning of the statute, without incorporating their challenge in the cost reports filed with their fiscal intermediaries." Bethesda, 485 U.S. at 405.  The Bethesda Court expressly found the Secretary's "strained interpretation" that "a provider's right to a hearing before the Board extends only to claims presented to a fiscal intermediary" to be "inconsistent with the express language of the statute." Id.  In recognizing that that "the plain meaning of the statute decides the issue presented," the Court soundly rejected the Secretary's interpretation because it was unreasonable and not subject to deference.  Defendant presents in this case the same unreasonable argument rejected by the Supreme Court in Bethesda.  Therefore, this Court should find that the Board properly exercised jurisdiction to hear this case because Plaintiff, by statute, was entitled to a hearing before the Board, as the PRRB properly determined in the proceedings below.

　　　　In Bethesda, the Court found that Congress' grant of broad authority to the Board under 42 U.S.C. § 1395oo – particularly subsection 1395oo(d) – further supported the conclusion that the jurisdictional requirements of subsection 1395oo(a) are to be viewed broadly. Bethesda, 485 U.S. at 405-406; see also Plaintiff Houston Heights' Memorandum in Support of Its Motion for

Summary Judgment ("Pl.'s Opening Brf.") at 14-15.  Plaintiff acknowledges that subsection 1395oo(a) governs Board jurisdiction and that subsection 1395oo(d) "sets forth the powers and duties of the Board . . . ."[4]  See Bethesda, 485 U.S. at 405-406.  Nonetheless, in construing this jurisdictional provision, Defendant ignores the Court's reasoning that the "language and design of the statute as a whole" suggests that Congress intended for the "dissatisfied" requirement of subsection 1395oo(a) to be a broad standard.  Id. at 405.  Hence, Bethesda stands for the proposition that Board review is available to any provider meeting the requirements of subsection 1395oo(a), including Plaintiff, regardless of whether claims were first presented to the fiscal intermediary.  As the Bethesda Court observed, the "Board has a role in shaping the controversy that is subject to judicial review; the fiscal intermediary does not."  Id. at 407.

Defendant misconstrues Bethesda as carving out a "narrow futility exception" to the "dissatisfaction" requirement of section 1395oo(a).  See Def.'s Opening Brf. at 21.  Specifically, Defendant avers that Plaintiff cannot claim it would have been "futile" for it to have included a claim for a CIB in its cost report.  However, the futility of claiming costs from the intermediary is clearly not a prerequisite to Board jurisdiction under the holding in Bethesda.   First, as discussed above, the unambiguous dictates of subsection 1395oo(a) provide that a provider dissatisfied with the final determination of program reimbursement is entitled to a hearing before the Board.  Plaintiff in this case clearly expressed such dissatisfaction in the appeal process it followed.  Second, the Supreme Court expressly held that Board jurisdiction is not limited to claims first presented to a fiscal intermediary.  See 485 U.S. at 405.  Although the petitioners in Bethesda "self-disallowed" costs based on a regulation that would preclude reimbursement, the

---

4       Defendant discusses at length that subsection 1395oo(a), not subsection 1395oo(d), sets forth the jurisdictional requirements of the PRRB.  See Def.'s Opening Brf. at 28-30. Plaintiff does not dispute this.  Rather, Plaintiff emphasizes the more relevant point that the Supreme Court in Bethesda examined the entirety of section 1395oo, including subsection 1395oo(d), and found that the "plain language of the statute demonstrates that the Provider Reimbursement Review Board had jurisdiction" to hear the provider's appeal .

Court does not impose an additional "futility" requirement for providers who seek to challenge the intermediary's final determination of Medicare reimbursement.  See id.  The statute simply does not support that additional jurisdictional requirement.  Third, in this case, Plaintiff appealed an audit adjustment made by the Intermediary relevant to Plaintiff's CIB eligibility.  Thus, the alleged "futility" factor is not only legally unsubstantiated, it is irrelevant here - where the Plaintiff's appeal to the Board challenges a CIB-related audit adjustment actually made by the Intermediary.

The backdrop of Bethesda makes this even more evident.  In Bethesda, the Supreme Court explained that it granted certiorari to resolve a conflict among the Courts of Appeals, some of which had adopted a narrow approach to Board jurisdiction in holding that a provider must first raise its dissatisfaction with the intermediary.  See Bethesda, 485 U.S. at 402-403.  The Court clearly rejected the narrow view taken by these courts.  Rather, the Supreme Court in Bethesda established a broad rule that providers need not "incorporat[e] their challenges in the cost reports filed with their fiscal intermediaries" in order to qualify under subsection 1395oo(a).  Necessarily, then, a "narrow futility exception" that somehow qualifies this broad statutory grant of jurisdiction is contrary to this holding.

The wide reach of Board jurisdiction is dictated by the "plain meaning of the statute."  Bethesda, 485 U.S. at 403.  Nothing in the statute or Bethesda requires that the requisite dissatisfaction must exist from the outset, or mandates that a provider forfeits its dissatisfaction rights when it does not take up the issue with its intermediary.  Rather, all that is required is that the provider be dissatisfied with the intermediary's final determination.  Accordingly, Defendant's suggestion that Bethesda further limited Board jurisdiction, i.e., by imposing an additional "futility" requirement for certain providers or otherwise, runs directly contrary to the Supreme Court's holding in that case.

### 2.    Case Law in the D.C. Circuit, Undisturbed by <u>Bethesda</u>, Supports Plaintiff's Position

This Circuit's precedent, clearly consistent with <u>Bethesda</u>, supports Plaintiff's position. In <u>Washington</u>, the D.C. Circuit Court of Appeals examined the meaning of new amendments to subsection 1395oo(a) that extended Board jurisdiction to hospitals receiving payments under the prospective payment system ("PPS"). <u>Washington</u>, 795 F.2d at 144. These amendments, as well as the provision at issue here and in <u>Bethesda</u>, require that a provider be "dissatisfied" with its final determination of Medicare reimbursement in order to obtain Board review. Although the provider in <u>Washington</u> was subject to PPS payments, the court's holding in that case is nonetheless illustrative in this appeal. The Court of Appeals in <u>Washington</u> concluded that subsection 1395oo(a) plainly "provides for PRRB review once there has been a final determination of the amount of payment . . . ." <u>Washington</u>, 795 F.2d at 150. In so holding, the <u>Washington</u> court did not reference any mandatory prerequisites to the Board's review, including Defendant's purported requirement that the provider first present its challenges to the fiscal intermediary. <u>Id.</u> Furthermore, like the Supreme Court in <u>Bethesda</u>, the <u>Washington</u> court found that the plain language of section 1395oo(a) controls, "obviating any need to decide whether the District Court or the Secretary has the better of the deference debate." <u>Washington</u>, 795 F.2d at 144. Accordingly, <u>Washington</u> comports with the subsequent conclusion in <u>Bethesda</u> that section 1395oo(a) establishes a clear and unambiguous requirement for Medicare providers seeking Board review.

Defendant cites the D.C. Circuit Court of Appeals' decision in <u>Athens Comm'y Hosp., Inc. v. Schweiker</u>, 743 F.2d 1, 6 (D.C. Cir. 1984) ("<u>Athens II</u>") in support of his argument. <u>See</u> Def.'s Opening Brf. at 22. Unlike <u>Washington</u>, however, <u>Athens II</u> took a narrow view of Board jurisdiction ultimately rejected by the Supreme Court in <u>Bethesda</u>. <u>See</u> <u>Bethesda</u>, 485 U.S. at 403 (listing <u>Athens II</u> as one of the decisions that necessitated the Court's resolution of the conflict among the Courts of Appeals). Defendant recognizes that <u>Athens II</u> is problematic, acknowledging the D.C. Circuit's subsequent explanation that <u>Bethesda</u> "may have undercut the

validity of the holdings in <u>St. Mary</u> and <u>Athens</u> [<u>II</u>] which limited Board appeals from an NPR to cost items originally presented to the intermediary . . . ." Def.'s Opening Brf. at 23, n. 4 (citing <u>HCS Health Servs. v. Shalala</u>, 27 F.3d 614, 621, n.4 (D.C. Cir. 1994). Plaintiff agrees that the narrow jurisdictional holding in those cases was subsequently undercut by <u>Bethesda</u>. Given that <u>Athens II</u>'s narrow view on the jurisdictional requirements of section 1395oo(a) was criticized by <u>Bethesda</u>, as recognized in this Circuit, <u>Washington</u> clearly provides more appropriate guidance for this Court.

### 3.    Defendant Improperly Foreclosed the Board's Statutory Jurisdiction to Hear Plaintiff's Appeal

In the proceedings below, the Board properly decided to accept Plaintiff's request for a hearing. After the Intermediary challenged that authority, the Board determined that it had statutory authority to hear the appeal. The Secretary reversed, adopting the Intermediary's argument. Plaintiff does not dispute the Secretary's statutory authority to review PRRB decisions. Nonetheless, the Defendant's foreclosure of Board jurisdiction is not within the scope of that review authority. The Secretary's action on the jurisdiction issue not only violates the principles expounded in <u>Bethesda</u>, it also inappropriately curtails the discretionary authority granted to the PRRB by Congress. This Court should reverse the Secretary's decision because it arbitrarily ignored the principles of <u>Bethesda</u> and failed to consider more analogous and relevant case law from the First Circuit. <u>See</u> Decision of the Administrator, Administrative Record ("AR") at 5-7.

As the First Circuit Court of Appeals held in <u>MaineGeneral</u>, 205 F.3d at 501, the Board has the power under subsection 1395oo(a) to decide provider reimbursement issues as a matter of discretion. Importantly, the First Circuit held that the Board's exercise of its statutory jurisdiction on a case-by-case basis is entirely consistent with <u>Bethesda</u>. Although Defendant makes much of the fact that there was a dissent in <u>MaineGeneral</u>, the decisions cited by the dissenting judge and relied upon by Defendant in this case are not analogous to the

circumstances in the instant appeal, as discussed below.  Accordingly, the majority's holding in
MaineGeneral provides more relevant and appropriate guidance in this case.  Plaintiff urges this
Court to follow the principles enunciated in MaineGeneral, clearly supporting Plaintiff's right to
a Board hearing here.

Similar to Plaintiff, the providers in MaineGeneral omitted reimbursable Medicare costs
from their cost reports.  After appealing the intermediary's final determination of Medicare
reimbursement, the Board dismissed the providers' requests, believing that it did not have
discretion to hear the appeal under subsection 1395oo(a).  The Court of Appeals reversed that
decision in light of Bethesda and St. Luke's Hosp. v. Sec'y of HHS, 810 F.2d 325 (1st Cir.
1987), a prior First Circuit decision evaluating Board jurisdiction.  First, the Court of Appeals
recognized Bethesda's conclusion that the statute, when viewed as a whole, makes clear that
Congress intended for the Board to hear dissatisfied providers on matters "covered in [the] cost
report." MaineGeneral, 205 F.3d at 500 (citing 42 U.S.C. § 1395oo(d)); Bethesda, 485 U.S. at
405.  Moreover, the Court of Appeals also looked to its prior decision in St. Luke's, which held
that the Board has discretion to exercise jurisdiction in cases where the provider does not first
present claims to its intermediary.  Because Bethesda did not address the issue of Board
discretion in accepting or declining such cases once the statutory requirements for PRRB
jurisdiction were satisfied, the MaineGeneral court reasoned, Bethesda and St. Luke's were
entirely consistent with one another. Id. at 499.

Defendant's primary contention regarding MaineGeneral is that the St. Luke's decision
upon which it relies did not focus on subsection 1395oo(a), but instead on subsection 1395oo(d),
in holding that the Board has discretion to take appeals once its statutory jurisdiction is invoked.
See Def.'s Opening Brf. at 28-30.  However, as Defendant recognizes, MaineGeneral
appropriately observed that St. Luke's did "not rel[y] on section 1395oo(d) alone, but also on
legislative history, the nature of judicial and administrative bodies, other subsections of 1395oo .
. . and special features of Board review." Def.'s Opening Brf. at 29 (citing MaineGeneral, 205

F.3d at 498).   Moreover, the Supreme Court in <u>Bethesda</u> also evaluated the statute as whole in reasoning that Congress intended for "dissatisfied" to be viewed broadly.  Because the First Circuit in <u>MaineGeneral</u> employed a similar analysis, and relied upon both <u>Bethesda</u> and <u>St. Luke's</u> in reaching its conclusions, <u>MaineGeneral</u> represents a consistent synthesis of both earlier cases.

Moreover, <u>St. Luke's</u> was not "inconsistent with the analysis subsequently adopted by the Supreme Court in <u>Bethesda</u>," as claimed by Defendant.  <u>See</u> Def.'s Opening Brf. at 28-29.  <u>St. Luke's</u>, like <u>Athens II</u> discussed above, was a case cited by the Supreme Court as creating a need to resolve the conflict among Circuits with respect to what it means to be a "dissatisfied" Medicare provider.  <u>See</u> <u>Bethesda</u>, 485 U.S. at 403.  Unlike <u>Athens II</u>, however, <u>St. Luke's</u> fell into that category of cases the Court viewed as adopting a broad view of "dissatisfied," a conclusion with which the Supreme Court ultimately concurred.  Nowhere in <u>Bethesda</u> does the Supreme Court criticize the holding reached in <u>St. Luke's</u> that the Board has discretion to exercise its statutory jurisdiction.  Rather, <u>Bethesda</u>, like <u>St. Luke's</u> before it, viewed the statute broadly and reached the conclusion that a provider may be "dissatisfied" without first presenting claims to its intermediary.  Thus, <u>St. Luke's</u> is clearly consistent with the <u>Bethesda</u>, as the First Circuit concluded in <u>MaineGeneral</u>.

Importantly, Defendant does not contend that the Board lacks the discretion to accept or decline hearing requests undertaken pursuant to subsection 1395oo(a).  As discussed in Part III.A.1 of this Memorandum, futility is not a requirement for the Board's statutory jurisdiction, as the Board recognized in accepting Plaintiff's appeal, under the plain meaning of the subsection 1395oo(a) and the Supreme Court's holding in <u>Bethesda</u>.  The First Circuit in <u>MaineGeneral</u>, dealing with facts closely analogous to those presented in this case, followed <u>St. Luke's</u> and <u>Bethesda</u> to their logical conclusion:  A provider may be "dissatisfied" within the meaning of the statute without first presenting a claim to its intermediary, thereby invoking the Board's statutory jurisdiction, which the Board has discretion to exercise.  This Court should

adopt the well-reasoned conclusion reached by the First Circuit in <u>MaineGeneral</u> and hold that Plaintiff was "dissatisfied" with the audit adjustment made by the Intermediary in the CIB portion of the cost report  and with not receiving a CIB under the final determination of the Intermediary.  Therefore, the Board properly exercised discretion under its statutory jurisdiction in accepting Plaintiff's appeal.

### 4.    The Decisions Relied Upon by the Secretary Are Inapposite to Plaintiff

Defendant relies heavily upon several cases, none of which are binding on this Court, which found the dicta in <u>Bethesda</u> to be persuasive when applied to certain providers with circumstances unlike that of Plaintiff.  <u>See</u> Def.'s Opening Brf. at 25-27, 32.  These decisions – and the <u>Bethesda</u> dicta upon which they rely – are readily distinguishable from the instant case and are therefore inapposite to Houston Heights in this case.

Defendant first cites to <u>Little Co. I</u>, which presents several key distinctions from the circumstances present in Plaintiff's case.  <u>Little Co. I</u>, 24 F.3d 984 (7th Cir. 1994).  First, the hospital in <u>Little Co. I</u> was subject to hospital PPS, not cost-based reimbursement like Houston Heights.  The hospital failed to exhaust clearly established administrative remedies by not appealing the intermediary's allegedly erroneous assignment of a diagnosis-related grouping ("DRG") in accordance with the PPS regulations, which require that such appeals be presented within 60 days.  <u>See</u> 42 CFR 412.60(d).  Defendant asserts that the <u>Little Co. I</u> court's consideration of this regulation is "irrelevant to this case" (Def.'s Opening Brf. at 26); however, Plaintiff submits that the hospital's failure to exhaust this mandatory remedy was essential to the court's holding that the hospital was not entitled to a Board hearing.  <u>See</u> <u>Little Co. I</u>, 24 F.3d at 992 (recognizing that "[t]he Board is bound by the 60-day rule, and would not have the 'authority' to allow the provider to circumvent its application by couching its appeal from the PPS payments as an appeal from the NPR.")

In Plaintiff's case, however, there were no mandatory "exhaustion" prerequisites that would preclude Board jurisdiction. <u>See</u> Pl.'s Opening Brf. at 19-22. Moreover, the court in <u>Little Co. I</u> expressly limited its holding to the circumstances presented in that case. The Court of Appeals expressed that, insofar as its conclusion took into consideration <u>Bethesda</u>'s "hint" regarding providers who fail to present claims to their intermediaries, its holding was limited to "the context where the provider <u>also</u> fails to appeal the PPS payment . . . ." <u>Id.</u> at 993 (emphasis added). Thus, the Seventh Circuit's decision did not rely on the dicta from <u>Bethesda</u> to the extent claimed by Defendant. In addition, the Board denied jurisdiction at the outset to the providers in <u>Little Co. I</u>, with the Seventh Circuit ultimately affirming the PRRB's decision on the grounds discussed above. In the instant case, however, the Board <u>accepted</u> jurisdiction at the outset, and after a hearing on the merits, upheld its initial decision to accept jurisdiction in a case where Plaintiff appealed a CIB-related adjustment by the Intermediary. Given that Plaintiff's situation is so different from the circumstances presented in <u>Little Co. I</u>, and considering that Seventh Circuit expressly limited its holding to those circumstances, Defendant's reliance on <u>Little Co. I</u> is misplaced.

Defendant points to another Seventh Circuit case and a recent district court case from the Eastern District of Michigan in support of his contention that <u>Bethesda</u> somehow precludes the Board from hearing Plaintiff's appeal. <u>Little Co. of Mary Hosp. & Health Care Ctrs.</u>, 165 F.3d 1162 (7th Cir. 1999) ("<u>Little Co. II</u>"); <u>Battle Creek v. Leavitt</u>, 5:05CV00053 (E.D. Mich. October 26, 2006) (copy attached to Def.'s Opening Brf.). Again, the facts presented in these cases are clearly distinguishable from the circumstances in Plaintiff's appeal. <u>Little Co. II</u> involved a provider that appealed to the Board regarding the intermediary's denial of certain reimbursement and then, while the appeal was pending, changed its position with respect to the basis for its appeal. 165 F.3d at 1165-66. Similarly, the provider in <u>Battle Creek</u> sought leave from the Board to add an issue to its ongoing appeal that had not been previously asserted when initially seeking a hearing before the Board. <u>Battle Creek</u>, at 2.

In both of these cases, the Board refused to allow the providers to raise their new positions in the appeals that had been granted on other grounds. Given that the Board may exercise its statutory jurisdiction under 42 U.S.C. 1395oo(a) on a case-by-case basis, it was entirely appropriate for the Board to determine that the providers in <u>Little Co. II</u> and <u>Battle Creek</u> could not change their positions once granted a PRRB hearing on other bases. <u>See</u> Part III.A.3, <u>supra</u>; <u>see also</u> Pl.'s Opening Brf. at 15-19 (discussing <u>MaineGeneral</u>, 205 F.3d at 501; <u>St. Luke's</u>, 810 F.2d 325, 332 (1st Cir. 1987)).

In this case, however, Plaintiff has not attempted to undertake a "bait-and-switch" approach to claiming certain costs after having been granted a hearing by the Board on other grounds. Here, Plaintiff was granted a hearing at the outset to challenge the Intermediary's audit adjustment and denial of a CIB, the computation of which was partially completed by the Intermediary in the cost report worksheet. Plaintiff's position in support of that claim – that Plaintiff kept its costs-per-discharge below statutory limits for more than three "full cost-reporting periods" – was accepted unanimously by the Board, and remains unchanged in this appeal. Thus, <u>Little Co. II</u> and <u>Battle Creek</u>, like <u>Little Co. I</u> before them, are not sufficiently analogous to support Defendant's assertion that Plaintiff was not "dissatisfied" within the meaning of 42 U.S.C 1395oo(a).

In sum, Houston Heights properly exercised its right to request a Board hearing because it was dissatisfied with the Intermediary's audit adjustment and its final determination not to award a CIB, in accordance with the express language of subsection 1395oo(a). There is no requirement that Plaintiff's claim must have been futile if presented to the Intermediary in order for Board jurisdiction to attach. Plaintiff might have considered other avenues of redress, yet it clearly was not required to do so under applicable law. There were no mandatory administrative remedies for Houston Heights to exhaust prior to requesting a hearing before the PRRB and, accordingly, Plaintiff did not "bypass" the Intermediary as claimed by Defendant. <u>See</u> Def.'s Opening Brf. at 32. The Board properly exercised its statutory jurisdiction in granting the appeal

request by Houston Heights.  Plaintiff has satisfied the Medicare requirements for Board review pursuant to 42 U.S.C. § 1395oo(a) and 42 C.F.R. § 405.1835.  Thus, the Secretary's final determination on the jurisdiction issue was arbitrary and capricious, an abuse of discretion, otherwise not in accordance with law, and therefore must be set aside.

**B.      Defendant's Application of the CIB Statute and Regulation was Plainly Erroneous and Inconsistent with Congress' Intent in Providing the CIB Cost-Saving Incentive**

There is no dispute that Houston Heights achieved the cost savings prescribed by the CIB statute and regulations, exactly as Congress had intended and for which it provided an incentive in the form of a bonus.  See Pl.'s Opening Brf. at 22-29.  Moreover, in full compliance with Medicare requirements and with the Intermediary's approval, Plaintiff submitted complete cost reports for fiscal years ending on February 29, 1996; February 28, 1997; August 31, 1997; and July 31, 1998.  Based on the cost savings reflected in these four complete cost reports, totaling 41 months in length, the PRRB unanimously determined that Houston Heights submitted at least three complete cost reports prior to the fiscal year at issue and therefore earned a CIB.[5]  The Board correctly concluded "that Congress' purpose is clear:  it intended that providers that kept costs below certain limits for at least 36 months could qualify for a CIB."  Id.  Nonetheless, Defendant erroneously reversed the Board's unanimous decision on this point and denied Houston Heights the bonus it earned, in contravention of Congressional intent and inconsistent with the regulatory scheme governing Medicare cost-based reimbursement.

---

[5]      Defendant presently asserts that Plaintiff maintained the prescribed cost savings for only 29 months.  See Def.'s Opening Brf. at 44 (quoting testimony of the Intermediary's representative at the Board hearing).  However, the Board rejected the Intermediary's calculation in deciding for Plaintiff, instead finding that "the data from FYEs 2/2[9]/96, 2/28/97 and the period between August 1, 1997 through July 31, 1998 . . . is acceptable" for purposes of calculating the CIB.  See PRRB Decision, Administrative Record ("AR") at 36.  Defendant did not challenge this aspect of the Board's finding in reversing the unanimous decision of the Board.  See Decision of the Administrator, AR at 2-9.  It is disingenuous of Defendant to now challenge the Board's findings in this regard, particularly where both parties do not dispute that Plaintiff maintained the required cost savings for 41 months.

Congress established the CIB as a method for rewarding certain Medicare-participating hospitals for maintaining lower costs-per-discharge over a prescribed period of time. Specifically, cost-efficient hospitals that successfully meet specified cost-containment standards are entitled to a bonus under the statute. See Pub. L. No. 105-33 (Aug. 5, 1997), codified at 42 U.S.C. § 1395ww(b)(2). Congress defined a CIB-eligible hospital as one that has, among other things, been paid as a PPS-exempt hospital "at least 3 full cost reporting periods" before the cost reporting period for which the hospital seeks a bonus. 42 U.S.C. § 1395ww(b)(2)(B)(i); see also 42 C.F.R. § 413.40(d)(5).

Here, the Defendant's plainly erroneous application of the statute and regulation is based solely on the contention that Houston Heights is not eligible for a CIB because not all of the cost reports submitted were twelve months in length. To that end, Defendant argues that "full cost reporting periods" means 12-month periods, and does not include cost reporting periods that are more or less than 12 months in length. See Def.'s Opening Brf. at 38-40. Defendant acknowledges that a "full cost reporting period" is not defined by the CIB statute or regulations, yet insists the terms "full 12-month cost reporting period" and "full cost reporting period" are used interchangeably in Medicare regulations and guidance. See Decision of the Administrator, AR at 7. Plaintiff previously has refuted this position in detail. See Pl.'s Opening Brf. at 24-26.

Many of the provisions cited by the Defendant in support of his argument have no relation to the CIB statute or regulation and, therefore, offer no insight whatsoever into Congressional intent with respect to cost containment incentives, including the CIB.[6]  Nor do any of the Defendant's statutory construction arguments provide support for his contention that Congress intended for a provider that controlled its costs more effectively than required by the

---

[6]    Defendant cites to, among other things, legislative and regulatory history involving graduate medical education ("GME") expenses and teaching hospital PPS payments. See Def.'s Opening Brf. at 36-37, 40.

CIB bonus calculation formula for <u>more</u> than 36 months should be disqualified simply because some of its cost reporting periods were less than 12 months in length.

Defendant grossly mischaracterizes Plaintiff's position in this regard by contending that Plaintiff "would turn every cost reporting period, no matter how short into a 'full cost reporting period'" and "would allow a hospital with 3 cost reporting periods each covering as little as one month to satisfy" the CIB requirements.  <u>See</u> Def.'s Opening Brf. at 42, 43.  Defendant clearly misses Plaintiff's line of reasoning, and expounds at length on Plaintiff's purported intent to circumvent the clear dictates of the CIB provisions.

As the Board unanimously recognized, Congress intended to reward those providers that maintained the prescribed cost savings for <u>at least 36 months</u>.  Houston Heights' cost reporting history during part of this CIB measurement period was uncharacteristic of its typical experience in that it had cost reporting periods both longer and shorter than 12 months in length, for valid and Medicare-permissible reasons.  Yet, that does not alter the fact that Plaintiff kept its costs below statutory targets for <u>41 months</u> prior to the fiscal year at issue.  Thus, it is Defendant, not Plaintiff, who is attempting to circumvent Congressional intent by seeking to create a loophole in the plain statutory language, through its strained analogies to other Medicare regulatory provisions, to deny Plaintiff the CIB it deserves.  This result is untenable.  This Court should reverse the decision of the Secretary as plainly erroneous and inconsistent with the intent of Congress and the regulatory scheme governing the CIB cost-savings incentive program.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Houston Heights is entitled to summary judgment as a matter of law.  The Decision of the Administrator, which constitutes the final administrative decision of the Secretary, is invalid because:  (1) it is an arbitrary, capricious and unlawful application of the clear and unambiguous statutory requirements for Board jurisdiction set forth at 42 U.S.C. § 1395oo; and (2) it is a plainly erroneous and unreasonable interpretation of "full cost reporting

period" as that term is used in the CIB eligibility criteria set forth at 42 U.S.C. § 1395ww(b)(2)(B)(i) and 42 C.F.R. § 413.40 under the cost-containment incentive program designed by Congress.  Accordingly, Plaintiff's motion for summary judgment should be granted and the Decision of the Administrator vacated such that the Intermediary is ordered to calculate and pay the Plaintiff its CIB for FYE August 31, 1999.

Respectfully submitted,

/s/ Andrew L. Hurst
Andrew L. Hurst, D.C. Bar No. 455471
Kevin R. Barry
Drew W. Carlson
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 -- East Tower
Washington, D.C. 20005-3317
(202) 414-9200

Dated:  November 29, 2006